## Greer, Mills & Co. v. Featherston.

### No. 1120. Decided June 26, 1902.

**1.—Trial by Court—Appeal—Motion for New Trial.**

On trial before the court without a jury, no motion for new trial is necessary to authorize the making up of a statement of facts and the determination of the appellate court thereon whether, on the most favorable view of the facts, the successful party was entitled to the judgment entered. (Pp. 660, 661.)

**2.—Same—Question of Law.**

The question whether the facts demand an instruction to the jury to find a certain verdict, is one of law, and, in a case tried by the court without a jury, there is no reason for a motion for new trial thereon, since the court must have passed upon it. (P. 661.)

**3.—Contract—Termination.**

See correspondence between employer and employe, held to have terminated such relations between them and to justify the appellate court in so finding, reversing contrary decision of the trial court, and rendering judgment. (Pp. 658, 661.)

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Clay County.

*Capps & Cantey* and *Theodore Mack,* for appellants.—In a nonjury case a motion for a new trial is not necessary in order to entitle appellant to a revision of the judgment. Bell County v. Alexander, 22 Texas, 357; Clark v. Pearce, 80 Texas, 151; Telegraph Co. v. Mitchell, 89 Texas, 441; Luther v. Telegraph Co., 60 S. W. Rep., 1029.

The first decision touching the necessity of filing motions for new trials in appeals from cases tried before the court without a jury is found in 22 Texas (Bell County v. Alexander, 357). In this case the question was directly involved and it was held as follows: "A jury having been waived and the case submitted to the court, a motion for a new trial was not necessary to entitle the plaintiff in error to a revision of the judgment."

This unequivocal enunciation made in 1859 is likewise a construction of our practice acts, those now in force being identical with the act in

force at the time this decision was rendered, and consequently in the numerous re-enactments of our statutes relating to new trials and appeals, it is presumed that the Legislature intended to adopt the construction originally placed upon the statute.   Hall v. White, 94 Texas, 452.

The Supreme Court of Texas has never announced a different rule in nonjury cases.   For more than forty years the practice of assigning errors and reviewing judgments upon appeals in cases tried by the court without a jury has been observed by the profession, and in no case during that period of time has such practice been questioned or criticised by the Supreme Court.   Quite recently, however, several courts of civil appeals have seemingly announced a different rule.   Wetz v. Wetz, 66 S. W. Rep., 870; Black v. Black, 4 Texas Ct. Rep., 178; Railway v. Gillette, 4 Texas Ct. Rep., 856.

Investigation has disclosed that in none of these cases was the attention of the court called to Bell County v. Alexander, supra.

In the case of Luther v. Telegraph Company, 60 Southwestern Reporter, 1029, the principle announced in the case of Bell County v. Alexander is referred to in the decision by Pleasants, J., and the rule there laid down observed.

There are numerous records in this court which upon examination will be found to contain no motions for new trials, but the court in every instance where the matter was properly assigned as error considered the sufficiency of the evidence to support or sustain the judgment. And in no case, so far as we know or by diligent research can find, was the practice of not filing motions for new trials in nonjury cases condemned or criticised by this court.   And it seems to us, since we have followed a time-honored practice, your honors should be impelled by the wise and just course adopted by the Supreme Court in Foster v. Smith, supra, and not disturb pending cases, no matter what future rule may be adopted or outlined.   Where complaint is urged that the judgment of the court is wholly unjustified by the uncontroverted evidence, it is not necessary to file a motion for a new trial to review the action of the court, since the action of the court thus becomes purely a question of law.

In Clark v. Pearce, 80 Texas, 151, and Telegraph Company v. Mitchell, 89 Texas, 443, this court clearly and unmistakably announced that even in jury trials it is not necessary to direct attention of the trial judge to errors of law.   For, having once acted, it is not to be presumed that the judge will change his ruling; and hence in order to appeal from such action that it be made ground for new trial.   The doctrine laid down in Telegraph Company v. Mitchell, 89 Texas, may well be applied to the case at bar.

If it be necessary, in a nonjury case, to direct the court's attention to its own errors, why is it not necessary in jury cases, under rule 67, to direct the court's attention to similar errors?   Rule 67 was directly involved in Telegraph Company v. Mitchell, supra, and was so construed as to authorize appellant to complain on appeal, by proper assignment,

of errors of law committed by the trial court, and this without having first called to the attention of the trial judge the errors in motion for new trial.

The question submitted in this case is whether or not it is necessary to file a motion for new trial in order to complain of an error of law committed by the trial court, the evidence being uncontradicted, and the assignment challenging the legal right of the plaintiff in judgment to recover under the undisputed testimony.

The second question certified, predicated upon an affirmative answer to the foregoing question, is whether or not the facts stated in the conclusions already filed, a copy of which, together with the briefs and motions, will accompany this certificate, warrant the judgment rendered by the Court of Civil Appeals?

It seems to us that the findings of the court are so conclusive in their nature as to render elaborate argument upon this question entirely unnecessary, and we feel that the legal conclusions of the Court of Civil Appeals predicated upon its findings of fact, the same being wholly without contradiction, are so just and proper that the same can not be successfully assailed.

*Allen & Wantland, J. A. Templeton,* and *Matlock, Miller & Dycus,* for appellee.—Before it can be claimed that there was error in the ruling of the court below upon a sufficiency of evidence to support the finding of the jury, the action of the court in the matter should be invoked by a motion for a new trial, which states specifically the ground for which the verdict is sought to be overruled. Clark & Loftus v. Pearce, 80 Texas, 151; Jacobs v. Hawkins, 63 Texas, 4; Cotton v. State, 29 Texas, 186; Foster v. Smith, 1 Texas, 70; Hart v. Ware, 8 Texas, 115.

Even though a case has been tried by the court, without the intervention of a jury, a question of fact can not be reviewed in the appellate court unless it has been called to the attention of the court below in a motion for new trial. People v. Terry, 43 S. W. Rep., 846; Wetz v. Wetz, 66 S. W. Rep., 869; Black v. Black, 67 S. W. Rep., 928; Gilett v. Railway, 68 S. W. Rep., 61; Rule 69, 84 Texas, 718; Marsalis v. Crawford, 28 S. W. Rep., 371; Whitmore v. Shiverick, 3 Nev., 303; James v. Goodenough, 7 Nev., 324; Conley v. Chedic, 7 Nev., 336; Beck v. Truckee Lodge, 2 Pac. Rep., 390; Burbank v. Rivers, 16 Pac. Rep., 431; State v. Sadler, 23 Pac. Rep., 799; Spiegelberg v. Mink, 1 N. M., 308; Sierra County v. Dona Ana County, 21 Pac. Rep., 84; Lichty v. Clark, 10 Neb., 475; Miller v. Antelope Co., 35 Neb., 237; Brown v. Ritner, 59 N. W. Rep., 360; Applegate v. McWhinney, 41 Neb., 253; Losure v. Miller, 63 N. W. Rep., 863; Losure v. Thompson, 63 N. W. Rep., 863; Hansen v. Kinney, 64 N. W. Rep., 710; Brum v. Dumay, 2 Mo., 125; Davis v. Scripps, 2 Mo., 187; Polk v. State, 4 Mo., 544; Hughes v. Fitzpatrick, 18 Mo., 254; Freeland v. Eldridge, 19 Mo., 325; Turner v. Turner, 17 Ohio St., 452; Spangler v. Brown, 26 Ohio St., 389; Kepner v. Snively, 19 Ohio, 296; Choteau v. Raitt,

20 Ohio, 132; Hutchinson v. Eaton, 9 Wis., 227; Woodward v. Howard, 10 Wis., 454; Davis v. Judd, 11 Wis., 11; Putnam v. Putnam, 14 Pac. Rep., 357; Camp v. Gullet, 7 Ark., 529; Campbell v. Thurston, 6 Ark., 442; Johnson v. Reed, 8 Ark., 204; Sandefur v. Mattingley, 16 Ark., 237; Strayhorn v. Giles, 22 Ark., 521; Mitchell v. State Bank, 13 Ark., 358; Cottrell v. Oliver, 22 Ark., 546; Taylor v. Van Meter, 53 Ark., 204; Smith v. Hollis, 46 Ark., 17; Griswold v. Sharpe, 2 Cal., 24; Hoppe v. Robb, 1 Cal. 373; Perry v. Cochran, 1 Cal., 180; Brown v. Graves, 2 Cal., 120; Rhine v. Bogardus, 13 Cal., 73; Allen v. Fennon, 27 Cal., 69; Galiardo v. Hoberlin, 18 Cal., 395; People v. Banvard, 27 Cal., 475; James v. Williams, 31 Cal., 211; Rice v. Inskeep, 34 Cal., 226; Steen v. Hendy, 38 Pac. Rep., 718; Gay v. Moss, 34 Cal., 126; Pio Pico v. Cuyas, 47 Cal., 178; Thompson v. White, 76 Cal., 381; Toulouse v. Burkett, 10 Pac. Rep., 28; Hayne's New Trials, sec. 96, p. 270; Stumpf v. Fraley, 7 Ind., 679; Everson v. Webster, 3 S. D., 382; Gade v. Collins, 66 N. W. Rep., 466; Siebel v. Bath, 40 Pac. Rep., 756; Railway v. Ball, 61 S. W. Rep., 327; Albright v. Peters, 78 N. W. Rep., 1063.

A surety is only required to pay the debt of his principal in case the principal fails to pay and the creditor is unable to realize his debt out of the chattel mortgage security, if he has such security. The surety can only be required to pay the balance after the chattel mortgages are exhausted. Rev. Stats. 1895, arts. 3813, 3814, 2341; Montrose v. Bank, 23 S. W. Rep., 709; Brandt on Surety. and Guar., sec. 80, p. 109.

As between Featherston and Greer, Mills & Co., Featherston was only a surety for the borrowers from Greer, Mills & Co. Burke v. Cruger, 8 Texas, 66; Babcock v. Bank, 1 White & W. C. C., sec. 819.

By virtue of the relation of surety alone, the surety is under no obligations, either moral or legal, to work for the creditor, or to collect from his principals for the benefit of his creditor. Same authorities.

Where one party receives the benefits of the services of another, the law implies a promise that he should pay for them. Landa v. Shook, 87 Texas, 611; Taylor v. Deseve, 81 Texas, 251; Mudgett v. Texas, etc., Mfg. Co., 61 S. W. Rep., 149; City of Sherman v. Connor, 29 S. W. Rep., 1053.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals of the Second Supreme Judicial District has certified to this court the following statement and question:

"This appeal is from a judgment allowing appellee $1000 as compensation for services rendered appellants from July 7 to December 21, 1899, and $50.65 as incidental expenses incurred for the benefit of appellants.

"Appellee, residing at Henrietta, Texas, undertook to represent appellants, live stock commission merchants, doing business at Chicago and other cities, as soliciting agent in Texas for the year 1899, as he had done during preceding years, at a salary of $2500, payable monthly, and

such reasonable expenses as appellants had been in the habit of allowing him. The business or employment so undertaken was such as soliciting agents for live stock commission companies usually do or perform, and required appellee to solicit shipments of cattle, and to make and solicit loans for appellants. In making loans the appellee was required to become responsible equally with the borrower and to add his own name to the notes, which were usually secured by mortgages on cattle, in which he was made trustee, and which were made payable to appellants, and by them assigned in the course of their business to others. Included in the duty of soliciting shipments of cattle was that of making commission contracts and collecting the usual commission of 50 cents a head when the cattle were not shipped to appellants in accordance with these contracts; but the business was principally a money-lending business. The commission year began with February, and loans were made or renewed in the spring and fall on from six to eight months time. It was the duty, as well as to the interest, of appellee to look after these loans, covering, as they did, movable security, in order to protect the holders and indorsers of the notes and himself as comaker and guarantor. Appellee received his salary in monthly payments up to July 7, 1899, when his employment ceased, as will be seen, we think, from the following correspondence:

"'HENRIETTA, Texas, July 3, 1899.
"'J. E. Greer, Esq., Union Stock Yards, Chicago, Ill.:'
"'Dear Sir.—I do not want to loan any more commission money. I have several reasons for my not wanting to do so. One is on account of the state of my health. I am not able to look after such matters as carefully as I would want to. Another is, the risk is too great for me to take where I have to indorse all paper. I thought best to write you this at once. So if you had another application for money in this territory you could have some one else to look after it. My health is some better since I had the operation performed in New York, but am not well by any means. Am working all the time, but am very weak. Respectfully yours,
"'W. H. FEATHERSTON.'

"'UNION STOCK YARDS, CHICAGO, July 7, 1899.
"'W. H. Featherston, Henrietta, Texas:
"'Dear Sir.—In reply to your letter of July 3, would say we are sorry to lose you from our force of solicitors, but, of course, if you can not see your way clear in the future to sign paper on loans that you make for us, and your health is not good enough to look after the business, we can not blame you for wishing to quit. Hereafter you will kindly refer applicants to George Beggs, at Fort Worth. We will try and take care of them when it is desirable. Yours truly,
"'GREER, MILLS & Co.'

"July 8, 1899, and before he had received the letter of July 7th, appellee wrote appellants as follows: 'Under the present condition of affairs, I do not think it is right that I should remain in your employ any longer. In the past I have been loyal to Greer, Mills & Co., but since showing the disposition you have, to treat me, as I think, in a very unfair way, it would be impossible for me to be as loyal towards you as I think I should be for a firm that I am working for, and feel that it would be dishonest in me to continue longer, but as there is considerable paper out that I am responsible for, it will be quite a while before it all matures, and I will have to look after the collection of the same, as well as being responsible, and, of course, will not want to do this without compensation; neither would I agree for anyone else to take charge of this paper and I continue to be responsible for the payment. I would suggest this: That you investigate all the paper that I have out, and if you find it safe, release me from any further responsibility.'

"Again, on September 8, 1899, he wrote them as follows: 'Referring to my letter to you of date July 8, 1899, I have to say that you have never informed me as to whether I would still be held on the paper referred to in said letter. Of course, if you expect to hold me responsible for the payment of said paper, I will have to be paid for my time in collecting it, which will amount to what my salary was. Please notify me by return mail whether you have released me on paper indorsed by me and held or negotiated by you. If you decline to do so I will consider that you owe me salary at the rate of $2500 per year, up to the time of maturity of all said paper.' To this appellants replied by letter of September 14, 1899, as follows: 'Replying to your letter of September 8th, if you will look at telegram sent you July 26th, you will find our decision which answers the communication which you say has not been answered. The paper you mention has been sold, and, of course, all makers on the notes are liable to the holders of the same. We accepted your resignation July 7th, and from that time you have not been in our employ. As you are one of the makers on this paper, it will be expected you will see that it is paid promptly at maturity.' In their letter of September 5, 1899, correcting the error of their bookkeeper in crediting appellee with full month's wages for July, appellants stated that he had ceased working for them on the 7th of July. Other letters and telegrams passed between the parties, but we find nothing in them to change the status fixed by what is above quoted.

"The notes taken and guaranteed by appellee, and assigned by appellants, amounted, on July 7, 1899, to $100,000 or over, and as they matured appellants repeatedly urged upon appellee the payment thereof, and he continued to look after the same till the last note was paid, December 21, 1899. He also released the mortgages given to secure the notes and caused to be collected on the commission contracts made in connection with the loans, but which he did not guarantee, as much as thirty-seven or thirty-eight hundred dollars, after July 7, 1899; that is, when the loans he was looking after were paid, the incidental commis-

sions in most instances were also paid. None of the loans were in fact collected by him, and only a portion of his time was given to looking after them.

"The case was tried before the judge without a jury, and judgment entered for appellee for $1000. No motion for new trial was made. The Court of Civil Appeals reversed the judgment of the District Court and entered judgment that appellee take nothing by his suit, and that the appellant go hence without day.

"The appellee filed this motion: 'Wherefore appellee moves this court to certify to the Supreme Court of Texas the question as to whether this court was authorized, under the law and practice in the State of Texas, to reverse the judgment of the court below and here render judgment for appellants upon a review of the facts upon which the judgment of the court below was based, in the absence of a motion for a new trial made and filed in the court below, and, as in duty bound, will ever pray.'

"The court entered the following order: 'This day came on to be heard the motion by appellee to certify this cause to the Supreme Court, which, having been heard and considered by the court, is granted; the question certified being: "Whether or not where, as in this instance, the case is tried before the court without a jury and no motion for new trial is made, this court is authorized to sustain assignments of error complaining of the judgment as being contrary to and 'wholly unjustified and unsupported by the evidence,' and stating what the evidence 'indisputably and uncontrovertibly' showed;" and in the event of affirmative answer to this question, we further certify the question, whether or not the facts stated in the conclusions already filed, a copy of which, together with the briefs and motions, will accompany this certificate, warranted the judgment rendered by this court."

Trial of causes before the court without a jury is provided for by the following article of the Revised Statutes:

"Art. 1292. The rules hereinafter prescribed for the trial of causes before the jury shall govern in trials by the court so far as may be applicable."

"Art. 1333. * * * Upon a trial by the court the judge shall, at the request of either of the parties, also state in writing the conclusions of fact found by him separately from the conclusions of law, which conclusions of fact and law shall be filed with the clerk, and shall constitute a part of the record; and in all cases where * * * the conclusions of fact found by the judge are separately stated, the court shall, unless the same be set aside, render judgment thereon, and it shall be sufficient for the party excepting to the conclusions of law or judgment of the court to cause it to be noted on the record in the judgment entry that he excepts thereto; and such party may thereupon take his appeal or writ of error without a statement of facts or further exceptions in the transcript; but the transcript shall in such case contain * * * the conclusions of fact and law." * * *

"Art. 1379. After the trial of any cause, either party may make out a written statement of the facts given in evidence on the trial and submit the same to the opposite party, or his attorney, for inspection. If the parties, or their attorneys, agree upon such statement of facts, they shall sign the same, and it shall then be submitted to the judge, who shall, if he find it correct, approve and sign it, and the same shall be filed with the clerk."

No motion for a new trial is necessary to authorize the attorneys and the court to make up and sign a statement of the facts upon which the judgment is based, and when the facts are thus stated the record is sufficiently complete to enable the appellate courts to decide whether, under the most favorable view of the facts, the successful party was entitled to the judgment entered.

The question propounded to us may be expressed thus: "Upon this statement of facts, should the court have instructed the jury to find a verdict for the defendant?" This presents a question of law, and there could not possibly be any reason to make a motion for a new trial, because the court must have passed upon every phase of the evidence that could arise. Bell County v. Alexander, 22 Texas, 350. In that case the issue was presented upon the construction of a will—purely a question of law. It was objected in the Supreme Court that no motion for a new trial had been made in the District Court, the case having been tried before the court without a jury. The court said: "There is nothing in the objection that no motion for a new trial appears to have been filed, a jury having been waived and the case submitted to the court, a motion for a new trial was not necessary to entitle the plaintiff in error to a revision of the judgment."

The facts found sustain the judgment of the Court of Civil Appeals. The opinion of that court renders it unnecessary for us to discuss the evidence.