The judgment is reversed, and the cause remanded.

---

## HARRISON v. STATE. (No. 3498.)

(Court of Criminal Appeals of Texas. April 7, 1915.)

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

George Harrison was convicted of manslaughter, and he appeals. Affirmed.

C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. This appeal is prosecuted from a conviction for manslaughter.

There is neither a bill of exceptions, nor a statement of facts. In the absence of these, no question is raised which can be reviewed.

The judgment is affirmed.

---

## GORDON v. STATE. (No. 3489.)

(Court of Criminal Appeals of Texas. March 31, 1915.)

Appeal from District Court, Collin County; M. H. Garnett, Judge.

William Gordon was convicted of manslaughter, and he appeals. Affirmed.

C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted of manslaughter, and his punishment assessed at four years' confinement in the state penitentiary.

In the absence of a statement of facts, or any bill of exceptions, there is no ground in the motion for a new trial we can review.

The judgment is affirmed.

---

## EAST v. STATE. (No. 3491.)

(Court of Criminal Appeals of Texas. March 31, 1915.)

Appeal from Lampasas County Court; J. Tom Higgins, Judge.

Leonard East was convicted of embezzlement, and he appeals. Affirmed.

C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was indicted by the grand jury of Lampasas county for embezzlement.

The indictment contains six distinct counts, evidently presenting the same matter in the different counts, so as to meet what the evidence would be. Appellant made six motions, one each to quash the said respective counts. It seems the court sustained two of them, and quashed two counts, but overruled his motions to quash each of the others.

We think it unnecessary to state the counts and the grounds of his motions. The several counts sustained are strictly in accordance with the statute and with the standard forms for indictments prescribed by both Judge White and Judge Willson.

The orders by the district court, showing the filing of the indictment therein and the transferring of the case from the district to the county court, were regular and without any substantial defect. So that appellant's motion, as he terms it, "to dismiss the case," was without merit.

There is no statement of facts or bill of exceptions in the record. No other question is raised, in the absence of these, which can be reviewed.

The judgment is affirmed.

---

## COMMONWEALTH BONDING & CASUALTY INS. CO. v. CATOR. (No. 751.)

(Court of Civil Appeals of Texas. Amarillo. March 27, 1915. Rehearing Denied April 24, 1915.)

1. APPEAL AND ERROR ⬚282—PRESENTATION BELOW — MOTION FOR NEW TRIAL — NECESSITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1991, providing what shall be sufficient to preserve for review exceptions to the conclusions of law or judgment of the court, a party appealing from the judgment rendered by the court without a jury need not file a motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1662–1665; Dec. Dig. ⬚282.]

2. APPEAL AND ERROR ⬚282—PRESENTATION FOR REVIEW—FUNDAMENTAL ERRORS.

Where a party, appealing from a judgment rendered by the court without a jury, has failed to move for a new trial, only fundamental errors will be considered, unless he has excepted to the judgment and caused the trial judge to file findings of fact and conclusion of law, or brought up a statement of facts in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1662–1665; Dec. Dig. ⬚282.]

3. CORPORATIONS ⬚80—STOCK SUBSCRIPTION —WAIVER—BURDEN OF PROOF.

In an action to cancel a stock subscription and recover money paid thereon, the burden was on the defendant corporation to establish its contention that plaintiff waived his right to recover by participating in a stockholders' meeting which decided to incorporate under the laws of Arizona instead of under the laws of Texas, as stipulated by the subscription agreement, by proving that plaintiff's stock was present or was voted at the meeting.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ⬚80.]

4. CORPORATIONS ⬚80—STOCK SUBSCRIPTION —RIGHT TO CANCEL—WAIVER—TRANSFER OF STOCK.

Where a subscriber for stock of a corporation, after being informed that the corporation had been incorporated in Arizona instead of in Texas, as stipulated by the subscription contract, exchanged his stock for the stock of another company, he waived his right to cancel his subscription on the ground that the corporation was incorporated in a state other than that stipulated.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ⬚80.]

5. CORPORATIONS ⬚80—STOCK SUBSCRIPTION —RIGHT TO RELIEF—STATUS QUO.

The cancellation of a stock subscription will not be decreed in favor of a subscriber who

---

has transferred the stock to a third party, who retains possession thereof, though the third party answers, disclaiming any interest in the stock; such remedy not ordinarily being available, where the status quo cannot be restored.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

6. CORPORATIONS ☞83—STOCK SUBSCRIPTION — CANCELLATION — INSTRUMENTS GIVEN IN PAYMENT.

That a corporation was chartered in Arizona instead of in Texas, as is stipulated by the prospectus and the subscription contract, was sufficient grounds, had the subscriber not been estopped from setting it up, for cancellation of the note and the deed of trust given in payment of the stock, where the corporation had notice of such stipulation when it accepted the subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞83.]

7. PLEADING ☞290—ANSWER—VERIFICATION —NECESSITY.

An exception to an answer, not verified as required by law, should have been sustained.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 859–863, 886½; Dec. Dig. ☞ 290.]

8. CORPORATIONS ☞448 — STOCK SUBSCRIPTION—MONEY PAID TO PROMOTERS—LIABILITY TO SUBSCRIBER.

Where, in a subscriber's action to cancel his stock subscription and recover money paid thereon, it appeared that the subscription contract stipulated that such money was paid to the promoters in consideration of their agreement to organize the company free of expense to the stockholders, and the evidence showed that none was received by the corporation, the corporation was not liable therefor; such money being recoverable, if at all, only by an action against the promoters.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. ☞ 448.]

9. CORPORATIONS ☞82 — STOCK SUBSCRIPTION—CANCELLATION—GROUNDS.

Where, in a subscriber's action to cancel a stock subscription, it appeared that plaintiff had not paid the full amount of the subscription, the failure of the corporation to make him a loan, pursuant to a promise to make a loan on "full payment of said subscription," could not avail him as a ground for cancellation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 285–295; Dec. Dig. ☞82.]

10. CORPORATIONS ☞80 — STOCK SUBSCRIPTION — CANCELLATION — EVIDENCE — MISREPRESENTATIONS BY AGENT.

In a subscriber's action to cancel a stock subscription, evidence of misrepresentations made by an agent of the promoters was admissible to show fraud in the inception of the subscription contract, though the contract stipulated that no conditions, representations, or agreements, other than those printed therein, should be binding; the effect of such evidence not being to vary or contradict the terms of a written instrument.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407–1407½; Dec. Dig. ☞80.]

11. CORPORATIONS ☞80 — STOCK SUBSCRIPTION—GROUNDS—FRAUD OF PROMOTERS.

Where the managing officers of a corporation, at the time of accepting a subscription procured by the promoters through fraud, have no notice of the fraud, the subscriber cannot thereafter cancel his subscription contract by reason of the fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

12. CORPORATIONS ☞80 — STOCK SUBSCRIPTION—CANCELLATION FOR FRAUD—RIGHT.

A subscription procured by fraud of the officers or agents of an existing corporation is voidable at the option of the subscriber.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

13. CORPORATIONS ☞80 — STOCK SUBSCRIPTION—CANCELLATION—MATERIAL MISREPRESENTATION.

A statement by an agent of the promotors that the corporation already had $200,000 in cash paid in on subscriptions, when in fact it had only comparatively a small amount in cash, was a material misrepresentation, such as would have authorized a cancellation of the stock subscription if the company had had notice of it when it accepted the subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244, 246–264, 1407, 1407½; Dec. Dig. ☞80.]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by L. S. Cator against the Commonwealth Bonding & Casualty Insurance Company and others. From judgment for plaintiff, the defendant named appeals. Reversed and remanded.

F. H. Haddix, of Ft. Worth, and Lumpkin & Harrington, of Amarillo, for appellant. H. E. Hoover, of Canadian, and Jas. A. Stephens, of Benjamin, for appellees.

HALL, J. This action was brought in the district court of Hansford county against the Bankers' Guaranty Company and certain individuals, as officers and organizers of both companies, to cancel a subscription to the capital stock of appellant and recover $625, paid in cash thereon. The venue was changed to Hemphill county, where, upon a trial before the court without a jury, judgment was rendered against the appellant company and in favor of appellee Cator, canceling the subscription, together with the stock certificate, the note, and deed of trust, and decreeing the recovery of $625. The appellee's original petition stated, in substance, that in the spring of 1910 R. T. Stuart and Coke W. Harkrider undertook, as promoters, to bring about the organization of appellant company. In circulars and a prospectus prepared by them, they represented that the company was to commence business, when in good faith a cash capital of $200,000 had been paid in; that appellee subscribed in good faith and gave his note and mortgage, relying upon the prospectus and statements in the subscription list and representations made by their agent, one C. S. McDonald; that it was expressly understood, agreed, and stipulated in the subscription contract that the company should be incorporated in pursuance of the laws of

the state of Texas; that a charter was procured for the company on the 23d of March, 1911, incorporating it under the laws of the state of Arizona, and at that time the company did not have, in cash, exceeding $16,000; that C. S. McDonald, who was the agent and representative, both of the organization company and of appellant company, which was afterwards organized, stated, in substance, that the object of the organization was to procure cheap money for its members; that they had a paid-up capital stock at the time of the subscription of at least $200,000, and had capital stock already paid in to furnish stockholders money at 6 per cent. interest, by approved real estate, and that, under these representations, plaintiff subscribed for 125 shares of the stock at the agreed price of $5,000; that the corporation had not, as represented by McDonald, made arrangements whereby it could loan plaintiff money at 6 per cent. on approved real estate; that, upon ascertaining the falsity of the representations made by defendant, plaintiff rescinded the contract and tendered the appellant the certificate of stock, demanded a return of the money, note, etc.

Without setting out the allegations in detail, the petition alleges, with great particularity, the fraudulent representations, the condition of the company, and the facts entitling appellee to the relief sought; that, after the execution of the note and mortgage, the defendants fraudulently combined together for the purpose of inducing the plaintiff to so act as to estop himself from setting up the invalidity of the contract and the fraud perpetrated upon him. These acts consisted of sending him proxies to vote his stock at meetings and inducing him to exchange his stock in appellant company for stock in the Bankers' Guaranty Company, organized by the same parties.

[1, 2] Appellee, by preliminary motion, objects to the consideration by this court of any of the errors assigned by appellant, because the record discloses that the case was tried before the court without a jury, and judgment rendered in favor of appellee; and the appellant failing to make a motion for new trial, and further failing to have the court file his findings of fact and conclusions of law, is here without any exceptions to the judgment and cannot be heard to complain. We find from the record that the appellant excepted to the judgment and has filed in this court, in due time, a statement of facts. Article 1991, Vernon's Sayles' Civil Statutes, which is a part of article 1333, Sayles' Civil Statutes, is:

"It shall be sufficient for the party, excepting to the conclusions of law or judgment of the court, to cause it to be noted on the record in the judgment entry that he excepts thereto; and such party may thereupon take his appeal or writ of error without a statement of facts or further exceptions in the transcript; but the transcript shall in such cases contain the special verdict or conclusions of fact and law aforesaid, and the judgment rendered thereon."

We conclude from this article that one appealing from a judgment rendered by the court without a jury need not file a motion for new trial, and it has been frequently so held (Frenzell v. Lexington, L. A. & I. Co., 126 S. W. 907; Luther v. Western Union Telegraph Co., 25 Tex. Civ. App. 31, 60 S. W. 1029; Griffin v. McKinney, 25 Tex. Civ. App. 432, 62 S. W. 82; Akes v. Sanford, 39 S. W. 952; G., C. & S. F. Ry. v. Gaedecke, 39 S. W. 312; Maverick v. Routh, 7 Tex. Civ. App. 669, 26 S. W. 1011; Bell County v. Alexander, 22 Tex. 350, 73 Am. Dec. 268); but, when no such motion is filed, the party appealing must except to the judgment and have the trial judge file findings of fact and conclusions of law (Pollard v. Allen & Sims, 171 S. W. 302, and authorities cited), or bring up a statement of facts in the record (Cornelius v. Harris, 163 S. W. 346; Greer v. Featherston, 95 Tex. 654, 69 S. W. 69). Failing in this, none but fundamental errors can be considered.

[3] Under the fifth, sixth, and seventh assignments of error appellant insists that appellee has waived his right to recover by participating in the stockholders' meeting, which decided to incorporate under the laws of Arizona, instead of under the laws of Texas, and by exchanging his stock in appellant company for stock in the Bankers' Guaranty Company, and that such acts constituted a waiver of the alleged fraud practiced upon him.

The record does not show that appellee's stock was voted at the meeting, or that it was even present at the meeting in which it was decided to incorporate under the laws of Arizona. The burden was upon appellant to establish this fact. Failing in this, appellee would not be estopped upon that ground. Cattlemen's Trust Co. v. Beck, 167 S. W. 754; Kampman v. Tarver, 87 Tex. 491, 29 S. W. 768.

[4] It is further contended by appellee that the statement in the letter received by him that the meeting was called to decide under what state laws they should incorporate was itself a fraud in that it did not notify him and other subscribers that the condition of the company was such that it could not be incorporated under the stringent laws of the state of Texas. This contention seems to have been sustained by the court. The witness Branham testified that the officers knew, long before the letter was written, that they could not incorporate in Texas. The question of waiver is raised under the sixth assignment by a general demurrer. The plaintiff's original petition showing that the plaintiff, prior to the time of filing said suit, exchanged and transferred his stock in the Bonding Company for stock in the Bankers' Company, it is insisted that plaintiff is in no position to request a cancellation. Plaintiff alleged

that on or about July, 1911, at the request of the officers of the Commonwealth Company, he transferred this stock to the Bankers' Guaranty Company, upon their representation that the Bankers' Company would carry out the original purposes of the Commonwealth Company, and that the same was made upon the request of that company; that the Bankers' Company never carried out the objects of its incorporation, and it has ceased to make any effort to do so, and in fact has never been organized; that the purpose and consideration of said transfer has wholly failed, and that the Bankers' Company has informed plaintiff that it does not claim any interest in said stock, and has promised and agreed to retransfer the same to plaintiff.

Appellee testified that McDonald's representations induced him to make exchange of stock, and that, before he consented to make it, McDonald told him that the Bonding Company had been organized under the laws of Arizona, instead of under the laws of Texas. The general rule is that a subscriber who has been induced to purchase stock by misrepresentation waives his right to cancel the contract by a sale or transfer thereof. Francis v. New York, etc., Ry., 108 N. Y. 93, 15 N. E. 192. The question of waiver is largely one of intent. Kennedy v. Bender, 104 Tex. 149, 135 S. W. 524. No reason is given here why there should not be implied from appellee's exchange of the stock, after he had been informed that the company was incorporated in Arizona, such an assumption of ownership as would waive the right to cancel upon the ground that it was incorporated in a state other than was stipulated in the subscription contract. Appellee cannot affirm the transaction by accepting and disposing of the stock, and at the same time maintain an action to cancel it, together with his contract. Appellee's witness Branham testified that McDonald was not the agent of the Bonding Company in procuring the exchange of stock, but was sent out by R. T. Stuart, who was at that time the president of the Bankers' Company; that, in advising appellee to exchange his stock, he and the other stockholders in the Bonding Company acted as individuals and not as officers or directors of the Bonding Company. Branham's testimony is uncontradicted by any competent evidence, and, if true, appellant is not estopped to insist upon the fact of the exchange of stock as a waiver.

[5, 6] If appellee does not now possess the stock so he can return it to the Bonding Company, the court cannot grant him the relief of cancellation and rescission. These remedies are not ordinarily applied where the status quo cannot be restored. The record is sufficient to show that stock in a corporation organized under the laws of Texas is more valuable and desirable and affords greater protection to the stockholders than where the organization is effected under the laws of Arizona. The prospectus and the subscription contract both state that the organization would be perfected under the laws of Texas, and we think the fact that it was chartered in Arizona would be grounds for canceling the note and deed in trust (if appellee was not in some way estopped to set it up), because the company had notice of such agreement when it accepted the subscription. 1 Cook on Corporations (6th Ed.) § 186.

[7, 8] The answer filed by the Bankers' Company, in which it disclaimed any interest in the stock issued to appellee by the Bonding Company, and wherein it is alleged it was organized with the consent of the officers of the Bonding Company, and that they afterwards prevented the completion of its organization, was not admissible against appellant for any purpose. The answer was excepted to by appellant because it was not verified as required by law, and this exception should have been sustained. It is clear that the appellant company would not be liable to appellee for a fee which he paid to the promoters in consideration of their agreement to organize a corporation. His subscription contract expressly stipulates that the $625 is paid to the promoters in consideration of their agreement to organize and incorporate the company, free of expense to the stockholders, and the testimony shows that none of this amount was ever paid or received by the Bonding Company. American Home Life Ins. Co. v. Jenkins, 138 S. W. 424. This amount, if recoverable at all, must be by an action against the promoters.

[9-12] Appellee cannot complain because he has not received the benefit of his loan contract, since his right to a loan is, by the terms of the contract itself, made to depend upon "the full payment of said subscription." Though the subscription contract stipulates that no conditions, representations, or agreements, other than those printed therein, shall be binding, still evidence of the alleged representations by McDonald was admissible to show fraud in the inception of the contract. The effect of this evidence was not to vary or contradict the terms of the written instrument. United States Gypsum Co. v. Shields (Civ. App.) 106 S. W. 724; Id., 101 Tex. 473, 108 S. W. 1165. The controlling question in this controversy is as to the binding effect of McDonald's alleged fraudulent representations upon the corporation, after it was chartered. The authorities bearing upon the right of a subscriber to cancel his subscription contract by reason of the fraudulent representations of a promoter are far from harmonious. That a subscription induced by fraud of the officers or agents of an existing corporation is voidable at the option of the subscriber is settled in this state. Davis v. Burns, 173 S. W. 476; Burleson v. Davis, 141 S. W. 561. But, if the question under

consideration here has ever been passed upon by the higher courts of this state, we have not been able to find the decision. Our Supreme Court held, in Weatherford, Mineral Wells & Northwestern Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837, that, in the absence of a statute or an express agreement binding the corporation, it cannot be bound by contracts made with its promoters, unless they are adopted by the corporation after it comes into existence, and this is held to be the rule, although the promoters purport to act in behalf of the projected corporation. It is said in that case that the promoter cannot be treated as an agent because the nominal principal is not then in existence. See, also, Jones v. Smith, 87 S. W. 210; Bivins v. Panhandle Packing Co., 140 S. W. 523; Lancaster Gin, etc., Co. v. Murray Ginning Co., 19 Tex. Civ. App. 110, 47 S. W. 389; Ennis Cotton Oil Co. v. Burks, 39 S. W. 966; Gough Mill & Gin Co. v. Looney, 112 S. W. 782. The question of fraud was involved in the case last cited, but the controversy was determined upon other issues. It was said in the Granger Case, supra, that it would be unjust to shareholders to charge them with liabilities arising under the contract of which they had no knowledge at the time they accepted subscriptions, and we think the reasoning applies with equal force to false representations made by promoters. The correct rule, in our opinion, is stated in 1 Thompson on Corporations (2d Ed.) § 739, thus:

"Where a person is induced to subscribe to the shares of an intended corporation by the fraudulent representations of its promoters, and if after the corporation is organized, and at the time when it acquires the right to adopt or reject the subscription, so as to make it a binding contract, its managing officers are apprised of the fraud, such adoption is subject to the right of rescission on the part of such subscriber provided he rescinds promptly. This is upon the theory that when a corporation, with knowledge, adopts a contract procured in its behalf through fraud, it adopts the fraud as much as though the fraud had been committed by its authorized agent with the knowledge of its managing board of officers." Helliwell on Stocks and Stockholders, § 83; 1 Thompson on Corporations (2d Ed.) 521; 10 Cyc. 262.

We find no evidence in the record that the appellant herein had any notice of the alleged fraud of McDonald until long after organization was perfected and appellee's subscription had been accepted. The case of Commonwealth Bonding & Casualty Co. v. Bomar, 169 S. W. 1060, decided by this court, and cited by appellant, is not authority, because the subscription was after incorporation, and the officers of the corporation had notice of the fraud perpetrated upon Bomar.

[13] We think, under the weight of authority, the statement by McDonald, at the time appellee's subscription contract was executed, that the company already had $200,000 of cash paid in upon subscriptions to stock, was material; and if appellee relied upon such representation, and was induced thereby to execute the contract in question, he would be entitled to the relief asked, provided notice could be brought home to the company, under the rule above stated. See Cook on Corporations (6th Ed.) §§ 712–714. It may be true as asserted and urged by appellee, that he has been victimized, but the state of this record is such that we are powerless to grant him any relief.

Because of the errors hereinbefore discussed, the judgment must be reversed, and the cause remanded.