D. C. CRAVER ET AL. v. T. A. GREER ET AL.

No. 2752. Decided November 10, 1915.

**1.—Appeal—Trial by Court—Motion for New Trial.**

Where trial is by the court without a jury, appeal may be taken on exceptions noted on the record to the judgment rendered (Rev. Stats., 1911, Art. 1991). No motion for new trial or request for findings of fact and of law is necessary to enable appellant to avail himself of such exceptions. Greer, Mills & Co. v. Featherston, 95 Texas, 654, followed. (Pp. 362, 363.)

**2.—Same—Rules of Court.**

Amended Rule 24 governing appellate procedure, and providing that "a ground of error not distinctly set forth in a motion for new trial * * * shall be considered as waived," applies only to cases of jury trial (Rule 71a, for District and County Courts). If otherwise construed it would conflict with Ar-

ticle 1991, Rev. Stats., an effect which it is beyond the power of the Supreme Court to give to its rules. Missouri, K. & T. Ry Co. of Tex. v. Beasley, 106 Texas, 160, followed. (Pp. 363, 364.)

### 3.—Receivers—Expense of Operation—Mortgage Lien—Priority.

The rule by which the expenses of operating a business by a receiver under direction of the court may be given preference over the claims of mortgage creditors is confined to property devoted to a public use, such as railways and the like, where there is a public duty to continue the operation. It has no application to receivership of a purely private corporation or business, such as that of a lumber manufacturer; and in such case claims of mortgage creditors on the proceeds of the mortgaged property can be postponed to debts incurred by the receiver in operation only on some principle of estoppel. Clint v. Houston Ice & Brewing Co., 106 Texas, 508, followed. (Pp. 364, 365.)

### 4.—Same—Estoppel.

Mortgage creditors who did not apply for or consent to a receivership, and only made use of it to assert, by suit or intervention, a right to the proceeds of their mortgaged property superior to that of the debts incurred by the receiver in operating the business, were not estopped from claiming such priority. (P. 365.)

### 5.—Same.

A mortgage creditor who was active in procuring receivership of the debtor's property, serving, by his agent, on a committee selected at a creditor's meeting to recommend the appointment of a receiver with such powers as, in their exercise, produced the indebtedness incurred by the receiver in operating the debtor's business, was estopped from claiming priority for his mortgage over such debts of the receiver. (P. 365.)

Questions certified from the Court of Civil Appeals for the Sixth District, in an appeal from Harrison County.

*Beard & Davidson,* for appellant D. C. Craver.—It is not the province of the court to operate a private enterprise at the risk of impairing, displacing, or totally destroying contract obligations. Houston Ice & Brewing Co. v. Clint, 159 S. W., 409; Clint v. Houston Ice & Brewing Co., 106 Texas, 508; Houston Ice & Brewing Co. v. Fuller, 26 Texas Civ. App., 239, 63 S. W., 1048; High on Receivers, sec. 796; Sage v. Memphis & L. Ry. Co., 125 U. S., 360; Kneeland v. American Loan & Trust Co., 136 U. S., 89; 34 Cyc., pp. 180, 297, 300, 346, 348.

The plaintiff was helpless to prevent interveners or interlopers from getting into his suit and having a receiver appointed and wasting the assets of the estate, that is, if the receiver's bills and expenses are to be paid ahead of his judgment. High on Receivers, sec. 796; Harrison v. Waterberry, 27 S. W., 109.

*Lacey & Bramlette,* for interveners Galt & Galt, appellants.—Where mortgaged property is placed in the hands of a receiver, the mortgagee not being responsible for nor the cause of the receivership, neither the mortgaged property nor the proceeds thereof can be subjected to the payment of receivership expenses, even though the mortgagee intervenes in the receivership proceedings, for to permit this to be done would be to

permit the impairment of a vested contract right and would contravene article 1, section 16 of the Constitution of Texas. Harris' Texas Constitution (annotated, 1914), p. 140; Houston Ice & Brewing Co. v. Fuller, 26 Texas Civ. App., 239, 63 S. W., 1048; Houston Ice & Brewing Co. v. Clint, 159 S. W., 409; same case in Sup. Ct., 106 Texas, 508, 169 S. W., 411; High on Receivers, sec. 796; Sage v. Memphis & L. Ry. Co., 125 U. S., 360; Kneeland v. Am. L. & T. Co., 136 U. S., 98; 34 Cyc., 180, 297, 300, 346, 348.

A court has no right, by a receivership, to take charge of and operate a private business, such as a sawmill business, for the running of which there is no public necessity, and incur obligations and expenses and make such obligations and expenses superior to prior, existing mortgages, which mortgages and the debts secured by same were valid and in existence before the institution of such receivership proceedings. Same authorities. Also the following: First National Bank v. J. I. Campbell Co., 114 S. W., 890; Royal Trust Co. v. W. B. & I. Ry. Co., 120 Fed., 13; Fosdick v. Schall, 99 U. S., 235, 25 L. Ed., 339; Kneeland v. American Loan & Trust Co., 136 U. S., 97, 34 L. Ed., 383; Penn. Steel Co. v. N. Y. City Ry. Co., 165 Fed., 455; Wood v. Guaranty Trust Co., 128 U. S., 416, 32 L. Ed., 472; General Electric Co. v. Canyon City Ice & Light Co., 136 S. W., 78; St. Louis Union Trust Co. v. Texas Southern Ry. Co., 126 S. W., 296.

*Carter & Strength,* for interveners Castleberry, Lawrence & Rodden, appellants.—In the operation of a private concern by a receiver a court has no power to displace valid contract liens existing before the appointment of the receiver, held by persons who were ignorant of such appointment, for the payment of receivership debts contracted in the operation of such private concern. Houston Ice & Brewing Co. v. Clint, 159 S. W., 409; Clint v. Houston Ice & Brewing Co., 106 Texas, 508.

*Henderson & Bolin,* for intervener National Bank of Daingerfield, appellant.—A court has no right, by a receivership, to take charge of and operate a private business, such as a sawmill business, for the running of which there is no public necessity, and incur obligations and expenses and make such obligations and expenses superior to prior, existing mortgages, which mortgages and the debts secured by same were valid and in existence before the institution of such receivership proceedings. Harris' Texas Constitution (annotated, 1914), 140; Houston Ice & Brewing Co. v. Fuller, 26 Texas Civ. App., 239, 63 S. W., 1048; Houston Ice & Brewing Co. v. Clint, 159 S. W., 409; same case in Sup. Ct., 106 Texas, 508; First National Bank v. J. I. Campbell Co., 114 S. W., 890; Royal Trust Co. v. W. B. & I. Ry. Co., 120 Fed., 13; Fosdick v. Schall, 99 U. S., 235, 25 L. Ed., 339; Kneeland v. American Loan & Trust Co., 136 U. S., 97, 34 L. Ed., 383; Penn. Steel Co. v. N. Y. City Ry. Co., 165 Fed., 455; Wood v. Guaranty Trust Co., 128 U. S., 416, 32 L. Ed., 472; General Electric Co. v. Canyon City Ice & Light Co., 136 S. W., 78; St. Louis Union Trust Co. v. Texas Southern Ry. Co., 126 S. W., 296.

*F. H. Prendergast* and *A. G. Carter,* for appellees.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The appellants, D. C. Craver, National Bank of Daingerfield, Galt & Galt, and Castleberry, Lawrence & Rodden, were contract lien creditors of T. A. Greer, a lumber manufacturer, operating sawmills in Harrison and Marion Counties, and a lumber yard in the city of Marshall. The property of Greer upon which their mortgage liens existed, had been subjected to a receivership on the order of the District Court of Harrison County, the operation of Greer's sawmill and manufacturing business being continued by the receivers at the direction of the court, resulting in a considerable indebtedness being incurred by the receivers in the course of its operation. The appeal was from the final decree rendered in the receivership proceeding, subordinating the claims of the appellants to the proceeds of the property, at the same time directed to be sold, to the costs and expenses of the receivership.

Summarizing the statement made in its certificate by the honorable Court of Civil Appeals, it appears that Craver's claim consisted of purchase money notes, aggregating $6,000 in amount, given by Greer in payment for the sawmill in Harrison County, certain adjacent tracts of growing trees, and certain standing timber in Marion County, and a number of mules, wagons, etc., secured by a duly registered mortgage lien. · Greer's indebtedness to the other appellants, respectively, was likewise secured by chattel mortgage liens on personal property taken charge of by the receiver, each duly registered. Being insolvent, Greer, in October, 1913, made a general assignment of all his property for the benefit of creditors, a large number of whom were unsecured; and the assignee took possession of the property. On the following day Craver filed a suit in the District Court of Harrison County against Greer and the assignee, setting up the indebtedness due him, and praying for foreclosure of his lien and order of sale. In this suit, on November 8, 1913, three certain creditors of Greer intervened, for themselves and such other creditors as might enter the proceeding and be responsible for costs, alleging Greer's property to be insufficient to pay his debts unless properly managed: that a creditors' meeting had been held at which a recommendation had been adopted for the making of an application for the appointment of a receiver to operate Greer's sawmills and manufacturing business, which it was believed would prove profitable, and whereby all creditors might be paid; and that if the property was subjected to forced sale to satisfy only the claims of the secured creditors, the result would be its waste and loss to the unsecured creditors. Upon this application the court appointed three receivers, with authority to take charge of all the property and operate the mills. Thereafter the court entered an order requiring all creditors to intervene for the establishment of their claims, by the first Monday in January, 1914; and later made a further order—in February, 1914,—authorizing a list of eighty creditors to intervene. Following the first order of the court requiring the inter-

vention of creditors, the appellants other than Craver, respectively, filed their interventions, duly pleading the indebtedness due them by Greer and their mortgage liens, and praying judgment for their debts, foreclosure of their liens and for order of sale. Galt & Galt expressly prayed that no part of the proceeds of the property covered by their lien be used to pay any of the expenses of the receivership until the payment of their debt in full; and Castleberry, Lawrence & Rodden, that their claim be classified as preferred.

At the January, 1914, term of the court Craver presented a motion, alleging that the proceeds of the timber on which his lien existed was likely to be dissipated by the indebtedness created by the receivers, and asked that they be required to desist from cutting any of it; but if such should be permitted, that a special fund be created in the hands of the clerk of the court to represent the value of the timber which was cut. An order was entered on February 20, 1914, creating such fund and providing that it should not be used for any other purpose. On March 20, 1914, judgment was entered in Craver's favor for his debt and for foreclosure of his lien. At the same time similar judgments were rendered in favor of the other appellants. An interlocutory decree was entered on the same date, making a classification of claims, Class A to include court costs and expenses of administration, with salary for the attorneys of "the applicant," and the receiver; Class B, the claims of laborers; Class C, mortgages, vendor's liens, and other contract liens; Class D, materialmen's liens adjudged to have a lien under the statute; and Class E, the unsecured debts. In the judgment rendered in Craver's favor it was recited that the court reserved the right to sell the property in pursuance of the foreclosure decreed, and that until the satisfaction of Craver's debt the receivers should pay, as a separate fund, into the hands of the clerk of the court $1.50 per thousand feet, to stand in the place of the timber, and to be exempted from all other charges and expenses; and as to the timber thereafter cut from the land, it should be adjudged as an operating expense of the receivers.

The receivers operated the plant until August, 1914, at a loss, the operation being discontinued by an order of the court at that time. At different times personal property belonging to the estate and covered by the appellant's liens, was sold by the receivers under the court's orders. Debts were incurred by the receivers under the authority of the court in the necessary operation of the plant and business, amounting to approximately $6500, of which about $800 represented the claims of laborers, all of which were unpaid at the time of the rendition of the final decree. The estimated value of the assets of the estate on hand is about $10,000, materially less than Craver's judgment and the debts of the receivership, practically all of the property on hand being that impressed with the liens of the respective appellants. The claims of the creditors in Classes C, D and E, according to the order of the court, aggregate more than $22,000.

On May 30, 1914, Craver presented a motion asking that the court

order the operation of the plant to be discontinued, and that the property subject to his mortgage be sold to satisfy his judgment. This was opposed by the receivers, and the motion was thereupon denied. In July, 1914, he filed another similar motion, which was also denied. The appellants, Castleberry, Lawrence & Rodden, at one time joined other creditors in an application for the appointment of a master in chancery, but it was dismissed without action by the court.

At the creditors' meeting held prior to the filing of the application for the appointment of the receivers, about eighty per cent of Greer's creditors were present and represented. Craver was present, but did not vote or participate in the discussion of the plan for a receivership. It appears that he said nothing at the meeting. The cashier of the appellant bank was present as its representative, participated in the proceedings, and acted as one of the committee appointed to select the person to be recommended to the court for appointment as the active receiver. One of the firm of Galt & Galt was present, but in the proceedings neither objected nor consented to the proposal for a receivership. No member of the firm of Castleberry, Lawrence & Rodden was present, nor were they represented.

The final decree was rendered after a hearing before the court, and a motion for a new trial was not filed by either of the appellants. The assignments of error in the Court of Civil Appeals assailed the ruling of the trial court in classifying the debts of the receivership as superior to the mortgage debts of the appellants, and ordering their payment out of the proceeds of the property directed to be sold, accordingly.

Four questions are certified by the honorable Court of Civil Appeals as follows:

"1. Whether or not, under the statute and the present rules for the courts of the State, it was necessary for appellants to have made a motion for new trial in the trial court in this cause to entitle them on appeal to a revision of the judgment, either as pertaining to question of fact or question of law, or as well to questions of law as to questions of fact involved in the case. ('A fundamental error' excepted from the question.)"

And in the event of negative answer to the foregoing,

"2. Whether or not the evidence, which is fully set out above, when considered with reference to the pleadings and motions in intervention of each of the appellants, is sufficient to support the conclusion of fact, as comprehended in the judgment of the trial court, that

"(a) appellant D. C. Craver acquiesced in and consented to the administration of the property by a receiver, and to the incurring of debts by the receiver as such in continuing the business and operation of the plant; that

"(b) appellant National Bank of Daingerfield acquiesced in and consented to the administration of the property by a receiver, and to the incurring of the debts by the receiver as such in continuing the business and operation of the plant; that

"(c)  appellants Galt & Galt acquiesced in and consented to the administration of the property by a receiver, and to the incurring of the debts by the receiver as such in continuing the business and operation of the plant; that

"(d)  appellants Castleberry, Lawrence & Rodden acquiesced in and consented to the administration of the property by a receiver, and to the incurring of the debts by the receiver.as such in continuing the business and operation of the plant.

"3.  Whether or not the trial court erred, as done, in adjudging the necessary debts.incurred by the receiver in continuing the business and operation of the plant during the receivership to be paid from the proceeds of the sale of the specific property covered by appellants' mortgages in priority and before the payment of

"(a)  appellant D. C. Craver's debt and mortgage;

"(b)  appellant National Bank of Daingerfield's debt and mortgage;

"(c)  appellants Galt & Galt's debt and mortgage, and

"(d)  appellants Castleberry, Lawrence & Rodden's debt and mortgage."

The first question was definitely settled by Greer, Mills & Co. v. Featherston, 95 Texas, 654, 69 S. W., 69.  The trial there considered was before the court, without a jury; the appeal was prosecuted upon a statement of facts, without conclusions of law or fact filed by the trial judge; and the judgment was assailed as being contrary to the law and the evidence.  Having in mind, as it must be assumed, the rule early announced in Foster v. Smith, 1 Texas, 69, and constantly since adhered to, that in jury trials the grounds of complaint against the verdict must, in a motion for a new trial, be called to the attention of the trial court to entitle to revision upon appeal questions essentially involving the jury's action, it was held that in trials without a jury a different rule prevails; since there the judgment is wholly the act of the court itself, rendered upon a consideration of all phases of the evidence, and presenting a question of law, as to which,—the judge having once ruled, and it not being presumable that he will change his ruling,—there could be no reason for requiring a motion for a new trial.  The decision was also rested upon the statute, then article 1333, Revised Statutes, 1895, which, in its relation to trials before the court, declared:

"And it shall be sufficient for the party excepting to the conclusions of law or judgment of the court to cause it to be noted on the record in the judgment entry that he excepts thereto, and such party may thereupon take his appeal or writ of error without a statement of facts or further exceptions in the transcript; but the transcript shall in such case contain  .  .  .  the conclusions of fact and law aforesaid and the judgment rendered thereon."

Such is still the statute law, this provision being, in exact terms, article 1991, Revised Statutes, 1911.  The question remains, therefore, controlled by that decision.

The statute is plain in its declaration that upon causing the exception

to be noted in the judgment entry, the party may, without further formality, take his appeal or writ of error. If he so elects, he may do so without a statement of facts, but upon the judge's conclusions of law and fact where request has been made that they be filed. He may appeal only upon a statement of facts; or without either conclusions of fact or a statement of facts, since the filing of neither is made a condition of the right of appeal. Whatever be the course pursued in these matters, it is not necessary in such trials that a motion for a new trial be filed, though it is an optional and commendable practice.

Because of the adoption by this court on January 24, 1912, since the decision of Greer, Mills & Co. v. Featherston, of amended rule 24, providing that "a ground of error not distinctly set forth in a motion for a new trial in the cause . . . shall be considered as waived," it has been ruled by some of the Courts of Civil Appeals that the holding in that case is no longer authoritative. But a construction of amended rule 24 which gives it that force, itself, invalidates the rule. This court, as emphasized in Missouri, K. & T. Ry. Co. of Tex. v. Beasley, 106 Texas, 160, 155 S. W., 183, where both this rule and amended rule 25 were considered, is by the Constitution denied the authority to establish a rule of procedure which is inconsistent with a statute; and the rule is therefore to be understood as without application to a trial in which the statute declares the appeal may be taken without the necessity of a motion for a new trial. Certainly it should be considered as in harmony with an express decision of this court that such is the effect of the statute in trials of this nature.

No confusion on the subject is found in the rules when they are considered as a body and in the light of the decisions of this court, for in other rules it is clearly recognized that not in all trials is a motion for a new trial necessary in order for the appeal to be considered. Rule 71a for the District and County Courts reads:

"71a.   A motion for a new trial shall be filed in all cases where parties desire to appeal from a judgment of the trial court, or sue out a writ of error in the cause, unless the error complained of is fundamental, *except in such cases as the statute does not require a motion for a new trial.*"

This exception is without meaning unless it refers to trials before the court without a jury. This is also true of the provision of rule 101a for the same courts, adopted to meet the Act of the Thirty-third Legislature (chapter 136) respecting assignments of error, that "all errors not distinctly specified in such motion, or in the assignments of error *where a motion for a new trial is not filed,* shall be waived."

That the question in all its phases may be relieved of any doubt we have deemed it proper to state in this opinion that the right to have the appeal considered in cases of this character without having filed a motion for a new trial, is not dependent upon conclusions of fact or law being filed by the trial judge, as seems to have been affirmed by two of the Courts of Civil Appeals in Cooney v. Dandridge, 158 S. W., 177, and Moore v. Rabb, 159 S. W., 85, each citing the decision of the Court

of Civil Appeals for the Fourth District in American Rio Grande Land & Irrigation Co. v. Mercedes Plantation Co., 155 S. W., 286. In its application to trials before the court, article 1991, after declaring that the appeal may be taken upon exception to the conclusions of law or the judgment being noted in the judgment entry without a statement of facts or other exceptions in the transcript, does provide that in such cases the transcript shall contain the conclusions of fact and law, as it is also required to contain the judgment rendered. It is not made the duty of the judge, however, to file his conclusions except at the request of one of the parties, and the making of such request is left optional with the parties. Article 1989. It can not, therefore, be supposed that in such cases the right of appeal without other action than causing due exception to be noted, is conditioned upon the filing by the judge of his conclusions. The direction of the statute, that the transcript shall contain them, means only that they are to be so included in the record when a party has requested that they be filed.

Upon the other questions, it is hardly necessary to restate the general rule, that a receivership is always subject to vested rights. As broad as are the powers of a court of chancery, it is without authority to impair the force of contracts. Where the court takes charge of railroads or other corporations affected with a public use, and undertakes to operate them through a receiver, the necessary debts of such operation may, as against all parties to the suit, be made a prior lien upon the income, and, if that be insufficient, upon the property itself. But, as has been frequently stated, this is an extraordinary power; and it is exercised only because of the public duty resting upon such corporations and the public interest accordingly involved in the continuance of their operation. On the other hand, the conduct of the business of an insolvent private corportion, or an insolvent person, is no part of the duty of a court of equity; and the authority, if it exists, for the displacement in such receiverships of a vested lien for indebtedness incurred through an operation of the business by the court, must be found in an estoppel which is justly enforceable against the owner of the lien. The distinction which governs the question, according to whether the property is impressed with a public use or is purely private in its nature, is generally recognized, and is announced in the decision of this court in Clint v. Houston Ice & Brewing Co., 106 Texas, 508, 169 S. W., 411.

Where a lienholder procures the appointment of a receiver with the power to operate the property which is subject to his lien, in a continuance of the business to which it is devoted, it is only just that the consequent expenses should take precedence over his lien, since it must be anticipated that such operation will be attended with cost, and possibly in excess of the income. Heisen v. Binz, 124 Ind., 284, 45 N. E., 104. The same rule should be applied to a party who, while not directly the applicant upon whose petition the receiver is appointed, is privy to the action which results in the appointment. But the indebtedness of the receiver has no right of priority over the vested lien of a creditor who

neither applied for the receivership nor was a party to its procurement, merely because he is a party to the suit. Metropolitan Trust Co. v. Railroad Co., 103 N. Y., 245, 8 N. E., 488.

These, in brief, are the principles which in our opinion should control the decision of the second and third question.

The respective liens of the appellants, Craver, Galt & Galt, and Castleberry, Lawrence & Rodden, should not have been subordinated to the indebtedness of the receivers. Neither of them applied for the receivership, and, according to the statement of the case made by the Court of Civil Appeals, neither of them was responsible for it. It was Craver's suit, already instituted for the enforcement of his lien, that was made use of by intervening creditors to obtain the appointment of the receivers. It could not be held necessary under such circumstances for him to assert the superiority of his lien, for he might well assume that its rank would be preserved by the court, yet he did so with reasonable promptness. He followed his motion made at the January term of the court, after the appointment of the receivers in the preceding November, to prevent the impairment of his lien through the receiver being required to desist from the cutting of the timber, by successive motions that the receivership be closed and his lien be given effect by a sale of the property. His mere presence at the creditors' meeting at which the receivership was determined upon, did not make him a party to the receivership. He did not participate in the discussion and took no part in the proceedings. Nor did the presence of a member of the firm of Galt & Galt at that meeting affect them with responsibility for the receivership, since it does not appear that their representative gave any consent to the proposal or took any action upon it. No member of the firm of Castleberry, Lawrence & Rodden was present at the meeting; nor were they represented. Galt & Galt, and Castleberry, Lawrence & Rodden, intervened in the suit, but, it seems, that was after the court had directed that creditors desiring to establish their claims should enter the suit for that purpose. Both asserted in their pleas of intervention the precedence of their claims.

The attitude, however, of the National Bank of Daingerfield was different. It was active in the procurement of the receivership; its cashier serving as one of the committee selected at the creditors' meeting to recommend to the court a receiver to be appointed with such powers as, in their exercise, produced the receivership's indebtedness. Its lien, therefore, is not entitled to prevail over such indebtedness.

It is our opinion, therefore, that the trial court incorrectly concluded that the appellants, Craver, Galt & Galt, and Castleberry, Lawrence & Rodden, acquiesced in and consented to the administration of the property by a receiver, and erred in adjudging the debts of the receivers as entitled to prior payment from the proceeds of property covered by their liens; but correctly determined that the National Bank of Daingerfield consented to the receivership, and properly subordinated its lien to the

receivership indebtedness in the judgment; and the second and third questions are so answered.