VARLEY v. NICHOLS-SHEPARD SALES CO. (No. 7636.)

(Court of Civil Appeals of Texas. Dallas. Jan. 13, 1917.)

1. APPEAL AND ERROR &#8703;281(2)—RESERVING GROUNDS FOR REVIEW—NECESSITY FOR NEW TRIAL—MOTION.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1990, providing for entry of judgment on special verdicts, article 1991, authorizing appeals without a statement of facts upon noting exceptions on the record in the judgment entry, and Supreme Court rule 71a (145 S. W. vii), requiring motions for new trial except where not required by statute, a motion for new trial is unnecessary on appeal from judgment entered on a special verdict.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. &#8703;281(2).]

2. APPEAL AND ERROR &#8703;690(4)—RECORD—QUESTIONS PRESENTED FOR REVIEW—NECESSITY OF SETTING FORTH EVIDENCE OBJECTED TO.

Alleged error in admitting a deposition is not reviewable where the contents thereof are not preserved in the bill of exceptions or otherwise under Supreme Court rule 62a (149 S. W. x), confining reversals to errors probably causing an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2899; Dec. Dig. &#8703;690(4).]

3. SALES &#8703;365—ACTION FOR PRICE—FINDINGS—FRAUD—SUFFICIENCY.

A judgment that the seller's fraud invalidated a tractor sales contract is not demanded by a special verdict that the tractor was represented to plow more than it did, especially where it could be profitably used for other purposes and the loss occasioned defendant by its defects was undetermined.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1077; Dec. Dig. &#8703;365.]

4. SALES &#8703;365—SELLER'S ACTION FOR PRICE—FINDINGS—INCONSISTENCY.

Jury findings that plaintiff's agent told defendant a tractor would do certain plowing, and that such representation was true, but that the engine failed on plowing, are not so inconsistent as to require reversal, where the first two findings were in response to a lengthy and involved question.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1077; Dec. Dig. &#8703;365.]

5. APPEAL AND ERROR &#8703;928(3)—PRESUMPTIONS—ISSUES SUBMITTED—EVIDENCE TO SUPPORT.

Submitting to the jury a question whether defendant buyer knew of alleged defects in a tractor when he paid a purchase price note thereon is not reversible error in absence of a statement of facts, being presumably warranted by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3751; Dec. Dig. &#8703;928(3).]

6. APPEAL AND ERROR &#8703;1062(1)—HARMLESS ERROR—SUBMISSION TO JURY.

Submitting to jury question whether defendant buyer knew of alleged defects in a tractor when he paid a purchase price note thereon is harmless, where the jury's failure to assess damages for such defects necessitated judgment for the entire purchase price.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig. &#8703;1062 (1).]

7. SALES &#8703;52(1), 181(1)—ACTION FOR PRICE—BURDEN OF PROOF.

Where plaintiff seller introduced purchase price notes and a mortgage securing them, defendant buyer had the burden of proving that the sales contract upon which they were based was obtained by fraud or breached by plaintiff.

[Ed.—Note.—For other cases, see Sales, Cent. Dig. §§ 118–123, 473–476, 1045; Dec. Dig. &#8703; 52(1), 181(1).]

8. SALES &#8703;364(3)—ACTION FOR PRICE—NOTES —INSTRUCTIONS.

In an action on purchase price notes, a requested instruction that plaintiff had the burden of proving its compliance with the sales contract is properly refused as misleading. since, after introduction of the notes, defendant buyer had the burden of showing the contract was obtained by fraud or breached by plaintiff.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1067; Dec. Dig. &#8703;364(3).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the Nichols-Shepard Sales Company against Frank Varley. Judgment for plaintiff, and defendant appeals. Affirmed.

J. W. Fisher, of Whitesboro, and Ross & Zumwalt, of Dallas, for appellant. Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellee.

TALBOT, J. The appellee sued the appellant to recover the sum of $1,842, besides interest and attorney's fees, due upon three promissory notes executed and delivered by the appellant to appellee in part payment for certain machinery, consisting of an oil gas tractor engine, separator and attachments, and to foreclose a mortgage given upon said machinery to secure the payment of said notes. The machinery was sold upon written contracts by the terms of which the appellee warranted that the tractor engine would develop—

"double its rated horse power, working in a belt upon a friction brake, and to be well made of good material, and durable if used with proper care, conditioned, if within five days from its first use it shall fail to fill this warranty, written notice shall be immediately given by the purchaser to Nichols-Shepard Sales Company, at Battle Creek, Mich., by registered letter. stating particularly how and wherein it failed to fill this warranty. Reasonable time shall be allowed the vendor to get·to the machine with its workmen and remedy the defect, if any there be; the purchaser to render friendly assistance and co-operation."

The contract stipulates that the use of said tractor engine for more than five days, or failure to return it as agreed upon, or failure to give the written notice above specified to appellee, shall operate as an acceptance of it and a fulfillment of the warranty mentioned. The other machines·are warranted by the appellee to be well made and of good material; that each of said machines, with proper management, is

capable of doing more or better work than any other machine made of like size and proportions working under the same conditions and on the same job, conditioned, that if within five days from its first use it shall fail to fill the warranty, written notice shall be immediately given by the purchaser to Nichols-Shepard Sales Company, at Battle Creek, Mich., by registered letter, stating particularly how and wherein it fails to fill the warranty. Reasonable time shall be allowed to get to the machine with its workmen and remedy the defect, if any there be; the purchaser to render friendly assistance and co-operation, etc. The contract, among other things not necessary for the purposes of the appeal to state, stipulates that failure to give the notices in writing as provided for or keeping the machinery after the five days allowed as above provided shall be a waiver of the warranty and a full release of the warrantor, without in any way affecting the liability of the purchaser for the price of the machinery or notes given therefor. The appellant answered by demurrers and specially at length charging that on the date of the written contracts entered into between himself and the appellee he called upon the agent of appellee and informed him that he desired to purchase a threshing outfit; that he had secured a good run in Grayson county, Tex., for the season of 1913; that he had already secured contracts with a number of persons for the threshing of many thousands of bushels of wheat and other grain; that the prices to be paid for threshing wheat were 10 cents a bushel and for oats 5 cents per bushel; that in order to do the threshing he desired a 16 horse power double-cylinder steam engine and a 32-inch by 52-inch rear separator with all attachments; that appellee's agent then told appellant about a gas tractor engine, but stated he did not have one in stock and would have to order it from the factory at Battle Creek, Mich.; that the gas tractor engine would be better than a steam engine; that appellant would be able with such an outfit as he could sell him to make a profit of about $2,000 out of his contracts; that appellant informed appellee's said agent that he could get from 800 to 1,000 acres of land to plow where he was going to thresh if he could get an engine that would do the work and would not pack the ground, and that if the gas tractor engine could pull the load the agent said it had or could pull it ought to pull 10 plows in plowing ordinary land, and the said agent replied it would pull 12 plows; that upon the representations of appellee's agent he agreed to buy the gas tractor engine, and told appellee's agent at the time that he was buying it upon what said agent said about it. Appellant further charged that the gas tractor engine sold to him by appellee, and for which the notes sued on were given, was not as represented by appellee's agent, but worthless; that it would not develop power enough to pull 10 plows, as appellee's agent represented it would do, and that it was defective in many particulars which were set forth; that the representations of appellee's agent were false and fraudulently made with the intent of defrauding appellant; and that but for such representations and his belief that they were true he would not have bought the machinery in question from appellee. Appellant charged upon the matters set forth by him that appellee had breached its warranties, and by way of cross-action sought to recover damages by reason thereof. The case was tried with a jury, and submitted upon special issues, and upon the answers of the jury thereto judgment was rendered in favor of the appellee for the amount sued for, with a foreclosure of the mortgage lien, and that appellant take nothing by his cross-action.

[1] The appellant filed no motion for a new trial in the lower court, and has brought the case to this court by appeal without a statement of facts. Appellant having failed to file a motion for a new trial in the district court, appellee insists that none of his assignments of error should be considered by the court, and that, as no fundamental error appears upon the face of the record, the judgment should be affirmed. This insistence of the appellee presents the first question for decision. There seems to be some conflict in the decisions of our Courts of Civil Appeals upon this question, but we have reached the conclusion that it should be determined against the contention of the appellee. This conclusion is authorized and supported, we think, by articles 1990 and 1991 of Vernon's Sayles' Texas Civil Statutes, rule 71a (145 S. W. vii), and the cases of American Rio Grande & Irrigation Co. v. Mercedes Plantation Co., 155 S. W. 286, and Craver v. Greer (Sup.) 179 S. W. 862. Article 1990 of the statute above mentioned, which is the same as article 1333, Revised Statutes of 1895, as amended by the act of the Legislature of 1899 (page 190), reads as follows:

"In all cases where a special verdict of the jury is rendered or the conclusions of fact found by the judge are separately stated the court shall, unless the same be set aside and a new trial granted, render judgment thereon."

Article 1991 of said statute reads thus:

"It shall be sufficient for the party, excepting to the conclusions of law or judgment of the court, to cause it to be noted on the record in the judgment entry that he excepts thereto; and such party may thereupon take his appeal or writ of error without a statement of facts or further exceptions in the transcript; but the transcript shall in such cases contain the special verdict or conclusions of fact and law aforesaid, and the judgment rendered thereon."

Rule 71a is as follows:

"A motion for a new trial shall be filed in all cases where parties desire to appeal from a judgment of the trial court, or sue out a writ of error in the cause, unless the error complained of is fundamental, except in such cases as the statute does not require a motion for a new trial."

Under this rule and the articles of the statute above referred to it was held by the Court of Civil Appeals of the Fourth District in the case of American Rio Grande & Irrigation Co. v. Mercedes Plantation Co., supra, and by our Supreme Court in the case of Craver v. Greer, cited, that it is not a necessary prerequisite to the perfection of an appeal and the right of an appellant to have a revision of the judgment appealed from that a motion for a new trial be made in the trial court when the case is tried without a jury and separate conclusions of fact and law are filed by the court. Indeed, in the case of Craver v. Greer, supra, the Supreme Court held that, when the case was tried by the court without the aid of a jury, the right to have the appeal considered without having filed a motion for a new trial is not dependent upon conclusions of fact or law being filed by the trial judge. In American Rio Grande & Irrigation Co. v. Mercedes Plantation Co., the court, after quoting rule 71a, said:

"The clear meaning of this rule is that motions for new trial shall be required in every case, whether tried with or without a jury, except when the statute by express provision does not require such a motion."

And it held that such an express exception is made by article 1333, Revised Statutes 1895, as amended by Acts of 1899, p. 190, which, as we have said, is the same as articles 1990 and 1991 of Vernon's Sayles' Texas Civil Statutes, quoted above. The Supreme Court in Craver v. Greer, supra, says that this statute, in providing that it shall be sufficient for the party excepting to the conclusions of law or judgment of the court to cause it to be noted on the record in the judgment entry that he excepts thereto, etc.; "is plain in its declaration that upon causing the exception to be noted in the judgment entry the party may, without further formality, take his appeal or writ of error." The present case was tried with a jury, but a special verdict within the meaning of article 1990 of the statute, the case having been submitted on special issues, was rendered, and the appellant caused his exception to the judgment entered thereupon to be noted in the judgment entry. In such case the statute is just as plain that the party aggrieved may take his appeal or writ of error without filing a motion for a new trial as in the case where a trial is had before the court without a jury. The statute expressly provides, as has been seen, that in all cases where a special verdict is rendered the court shall, unless the same be set aside, render judgment thereon, and that it shall be sufficient for the party excepting to the judgment of the court to cause it to be noted on the record in the judgment entry, having done which he may take his appeal without a statement of facts or further exceptions in the transcript, but the transcript must contain the special verdict and judgment rendered thereon. Thus

by express provision of the statute it is not necessary in such trials that a motion for a new trial be made in order to entitle the appellant to revision of the judgment from which he appeals.

The appellee further objects to a consideration of the appellant's assignments of error on the ground that they are not briefed in accordance with the rules and for other reasons stated, and while we believe some, if not all, of them are subject to certain objections urged, we have concluded to consider them.

[2] The first, second, third, and fourth assignments of error complain of the trial court's action in admitting in evidence "certain parts or portions of a purported deposition given by defendant before W. L. Hay, a notary public for Grayson county, Tex." It is asserted that this was error, because: (1) The deposition was not signed by the witness; (2) because there was no authority in law for the taking of the depositions, the same being an ex parte deposition, and the plaintiff in the suit being a corporation. Our statute prescribes that, where either party thereto shall be permitted to take ex parte depositions, and it is also provided by statute that the answers of a witness whose depositions have been taken shall be reduced to writing and shall be signed and sworn to by the witness, but the action of the court in permitting the introduction of the depositions in this instance cannot, as the matter is presented in this court, be reviewed and the case reversed because thereof, for the reason that it is not made to appear by the bill of exception reserved to its admission or otherwise what the evidence was which is charged to have been admitted, or its bearing upon the issues involved. It may be conceded that the trial court erred in admitting the testimony, but unless this court can say that the error amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, or was such as probably prevented the appellant from making a proper presentation of the case to this court, it furnishes no ground for a reversal. Rule 62a (149 S. W. x). Without knowing what the testimony admitted was, it is impossible for us to say that it was calculated to cause either of the things mentioned. Besides, those portions of the ex parte depositions of the defendant which the court allowed to go to the jury may have been admissible as material declarations or admissions of the defendant bearing upon some issue in the case, although the taking of ex parte depositions in such a case was not permitted by the statute. Railway Co. v. Thompson, 44 S. W. 8.

For the same reason appellant's seventh and eighth assignments of error, charging that the trial court erred in refusing to sustain his motion to quash the ex parte depositions in question, will be overruled.

The fifth and sixth assignments of error

are, in substance, as follows: Fifth, the court erred in rendering judgment for the plaintiff upon the answers of the jury for the reason that plaintiff sued upon a written contract, and the answers of the jury show that said contract was procured by fraud, which invalidated said contract; sixth, the court erred in rendering judgment for the plaintiff upon the answers of the jury, because the answers of the jury to questions 1, 2, 4, 5, and 12 are so contradictory and inconsistent that no judgment could properly be rendered thereon in favor of the plaintiff. Neither of these assignments should, in our opinion, be sustained. At the request of appellant the trial court gave 22 special issues to the jury, the substance of the question submitting issues Nos. 1, 2, 4, 5, and 12, and the answers thereto being as follows:

(1) "At the time of the purchase of the engine, did the defendant and Noah White, as agent of the plaintiff, discuss the purchase of said engine, and in such discussion did the defendant tell said agent, White, that he desired a steam engine and separator in order to thresh during the season of 1913, and that he had secured a good run in Grayson county, Tex., and would thresh about 1,200 acres of grain, about two-thirds of which was wheat, and that the total amount of grain which he would be able to thresh in his run would be from 6,000 to 6,500 bushels, and that he had contracts with J. W. Thompson for 400 acres of grain, William Miller 300 acres, C. L. Neal 200 acres, and August Drier from 300 to 400 acres; that the average yield of wheat was 30 bushels per acre, and the average yield of oats 60 bushels per acre, and that the price for threshing was 10 cents per bushel for wheat and 5 cents per bushel for oats; that the defendant expected to make a profit in said year in threshing in the sum of $2,000; that he desired to use the engine to plow land of the persons for whom he would thresh, and that he could get from 800 to 1,000 acres of land to plow; (that, in addition to the persons above named with whom defendant had contracts, he would have been able to thresh for Mr. Wright about 350 acres of grain, Mrs. Kelcey, about 300 acres, Mr. Pierson, about 140 acres, Will Allen, 200 acres, Hugh Archer, 260 acres, Mr. Dishner, 180 acres, Mr. Smith, 185 acres, Judge Rice Maxey, about 280 acres, Mark Holliday, about 230 acres, Davis Ranch, about 500 acres, Mr. Crane, 400 acres, and a German about 400 acres, and several small crops); that the plaintiff, through its agent, White, stated to the defendant that a 22 horse power gas tractor would be better than a steam engine; that it was cheaper to operate and would last longer; that there would not be flues and grates to burn out; that there would not be an expense for a water hauler and team, and that the 22 horse power gas engine would pull the same load that a 22 horse power steam engine would pull, and that he would guarantee it to do it; that at Winnipeg he pulled two dead engines full of water and a separator behind, and pulled them through the mud from the fair grounds to the depot, and that he was the only man who pulled in from the fair grounds to the depot; that the steam engine so pulled in was a 25 horse power double-cylinder engine and a 16 horse power double-cylinder engine; that he made this pull with a 22 horse power gas engine such as the one in controversy herein; that the defendant asked said agent if the engine would pull 10 plows in plowing ordinary land, and said agent replied that it would pull 12 plows, and that it would not pack the ground so as to ridge the land, and that he would furnish an extra wide wheel, and that the engine was much lighter than a steam engine and would do better work; that the engine, properly constructed, was of good material, and would last longer than a steam engine, and could be operated at less expense and would do all that a steam engine would do and as successfully both in threshing and in plowing; that the defendant told said agent that he expected to have his son, Boone Varley, run said engine, and said agent inquired what experience Boone Varley had had in running engines of this character, and was told that said Boone Varley had been running a steam engine since he was a barefoot boy, and that he had been handling gas engines for five or six years, but that he had never had any experience in handling an oil gas tractor, said agent replied that he would not have any more trouble in handling the oil gas tractor than he would in handling steam; defendant asked said agent if he would put a man in the field for a week or ten days until the defendant was satisfied with the engine, and said agent replied that he would and longer until the defendant was satisfied with the engine; the defendant stated that he had never had any experience with gas tractor engines and that he was relying upon the statement of the agent White. Answer: Yes, except to part on page 2 marked (☐). No to that."

(2) Did appellee's agent prepare a written contract for the engine and request appellant to sign it telling him that it was only an order for the machinery, and that it contained the warranties, such as stated in question No. 1, and that on account of such statement the appellant was induced to sign said contract? Answer: Yes; and, further, without giving appellant an opportunity to read it? Answer: No.

(4) "If the jury find the representations set out in questions Nos. 1 and 2 were made by appellant to appellee's agent, then were such representations true or false? Answer: true, except part marked No on page 2."

(The part marked "No" on page 2 relates to certain alleged contracts which appellant claims he had and advised appellee's agent of, and which the jury found appellee's agent did not know about.)

(5) "Was the engine sold to appellant such as appellee's agent represented it to be in question No. 1? Answer: No; engine failed on plowing."

(12) "Would the appellant, with an engine such as represented in question 1, have been able to carry out his plowing contract? Answer: Yes."

There are other findings of the jury that will be referred to later on in this opinion. All the material statements or representations charged to have been fraudulently made by the appellee's agent to appellant for the purpose of inducing appellant to sign the contracts or orders for the machinery in question, and which he alleges did induce him to sign them, were found by the jury to be true, except the statement in regard to the number of plows the engine would pull. As has been seen, in answer to the question, "Was the engine sold to appellant such as appellee's agent represented it to be in question No. 1?" the jury answered, "No; engine failed on plowing."

[3] By the first assignment of error here under consideration and set out above the appellant contends that the answers of the jury to the questions submitted show that the written contract sued on "was procured by fraud which invalidated said contract," and therefore the trial court erred in ren-

dering judgment for the appellee. The only findings of the jury referred to by appellant in support of this contention, and the only ones upon which such a contention could be based, is the one just quoted to the effect that the "engine failed in plowing," and that appellee's agent prepared a written contract for the purchase of said engine by appellant and requested him to sign the same, telling him that it was only an order for the machinery, and that it contained the warranties such as stated in question No. 1, and that on account of such statement appellant was induced to sign said contract. As we have before stated, no statement of facts accompanied the record sent to this court, and in the condition we find it we would not be warranted in holding that because of the findings of the jury just mentioned the trial court should have held that there was such a fraud practiced upon appellant by the appellee's agent in the negotiations for the sale of the machinery and in procuring the appellant's signature to the contracts by which such sale was consummated as defeated a recovery upon the notes given in part payment for said machinery and sued on in this action. In Murray Co. v. Putman, 61 Tex. Civ. App. 517, 130 S. W. 631, it appeared that Putman had entered into a written contract with the Murray Company for the purchase of certain machinery, and that in said contract the machinery was warranted to be of good material and "to perform well if properly operated by competent persons." The contract further provided that, if upon starting the machinery the purchaser, at any time within ten days, was unable to make the same operate well, he should give the Murray Company telegraphic or written notice of the fact and state wherein the machinery failed to conform to the warranty, and a reasonable time should be given the Murray Company to send a competent person to remedy the difficulty, the purchaser rendering all necessary and friendly assistance, etc. In stating his cause of action Putman alleged, in effect, that the Murray Company contracted to erect, construct and equip the machinery upon his premises and put the same in first-class condition on or before August 1, 1907, for the purpose of ginning cotton, but that said contract had been breached by the company, in that the machinery did not reach his premises before August 14, 1907, and that the machinery was not erected during the season of 1907, by reason of which Putman lost the ginning of that season's crop, to his damage $2,000. The Murray Company answered, setting up the written order given for the machinery and denying that it contracted to erect and put up the machinery for operation. Putman then by an amended petition alleged that the written order for the machinery did not contain all the contract, but that the contract was in part written and in part verbal, and that the verbal part was not in-

cluded in the written part by fraud, accident, or mistake. Over the objection of the Murray Company, Putman was permitted to testify, in substance, as follows:

"Mr. Ellison [the Murray Company's agent] drew up that written order [for the machinery], and I signed it in duplicate, and he left one copy with me. I didn't have my specs with me at the time I signed it, and I didn't read over all the fine print, Mr. Ellison just told me the substance of it and we agreed. He didn't read it over to me. He did not tell me that there was anything in it that we had not agreed upon; we talked it over and then he drew the contract. I can't read fine print at all without glasses. I don't claim to be bright. I had confidence in him [the agent] at that time. I fully believed he would write down our agreement on that paper. He just told me what it amounted to and he didn't care for the mortgage on the machinery. My son and I were plowing in the field. We both stopped and sat down on the cultivator during the time of this contract."

Putman's son testified to the same effect. The admission of this testimony was assigned as error, on the ground that Putman thereby undertook by a prior or contemporaneous agreement to "vary, alter, contradict, and add to the terms of the written contract between the parties sued on." In disposing of the assignment this court held that the effect of the parol testimony was to change, alter, and contradict the written order given for the machinery, and after expressly recognizing the familiar rule that a written contract may be avoided by allegations and proof that fraud, accident, or mistake entered into the making of the contract, and in effect admitting that the allegations of fraud, accident, or mistake made by the plaintiff, Putman, were sufficient to admit proof on the issue propounded the following question:

"Does the evidence show such fraud, accident, or mistake in the making of the contract in question that authorizes plaintiff to vary or alter its terms by parol evidence?"

The court then, after reviewing the testimony, held that it was insufficient for the purpose offered and admitted. This decision of the court serves to illustrate, and is referred to for that purpose only, that the finding of the jury bearing upon the alleged statements of the appellee's agent in regard to the contents of the written orders given by the appellant for the machinery involved in the present case and the finding that the oil gas tractor engine, a part of that machinery, "failed on plowing," are insufficient to justify the conclusion insisted upon by appellant that there was such fraud practiced upon him in securing said orders as required the rendition of a judgment denying appellee a recovery upon the notes and mortgage sued on. The testimony in the Murray Company Case tended as strongly to show fraud in that case as the mere finding of the jury that the engine sold appellant "failed on plowing" tends to show fraud in this case. The jury found that the engine sold and delivered to appellant was such an engine as the one described in the written con-

tract or order signed by him, and that appellant was not denied an opportunity to read the contract, and there is no express finding that he did not read it or did not understand its contents. The appellant charged that the engine was worthless, but the jury found that he was not only able to carry out his threshing contracts with it, but did carry them out and made profits. They did not find to what extent or why the engine failed "on plowing," nor did they find that the statement of appellee's agent in reference to the capacity of the engine in pulling plows was made with the fraudulent intent to induce its sale or that such statement constituted a warranty of the capacity of the engine within the contemplation and understanding of the parties. The only statement made by appellee's agent in reference to the capacity of the engine to do plowing, shown in the record sent to this court, and found by the jury to have been made, is the one appearing in the very lengthy and perhaps involved question No. 1, quoted in this opinion, and appears to have been made in answer to the question of the appellant "if the engine would pull 10 plows in plowing ordinary land." The finding of the jury is to the effect that appellee's agent in reply to said question of appellant stated that the engine would pull 12 plows. It is upon this answer made under the circumstances stated that appellant bases his contention that appellee's agent warranted that the engine sold him possessed drawing capacity sufficient to enable it to carry out his plowing contracts, and he charges that said answer was a false statement made to defraud him and required the rendition by the district court of a judgment that appellee take nothing by its suit. Considering the several findings of the jury, and in the absence of a statement of facts, we are unable to agree with appellant's contention. There is no finding whatever that any warranty contained in the written order or orders given for the machinery was breached, and it is not at all improbable that the trial judge concluded, and was authorized to conclude, from the evidence adduced, in the absence of a finding of the jury to the contrary, that the verbal statement of the appellee's agent that the engine would pull 12 plows was a mere expression of his opinion, a "trading opinion" as to the drawing capacity of the engine, and not a warranty of its capacity. Furthermore, the findings of the jury make it clear that the engine was not entirely worthless, and that the consideration of the notes sued on had not entirely failed, if there had been any such failure at all. They did find that appellant would have made a profit on his plowing contracts with an engine "such as represented in question 1, quoted above, and that he lost money on said contracts in his efforts to operate the engine," but in answering questions as to how much profit he would have made, with such an engine, and how much money he lost in his efforts to operate the one he got, the jury said, "We do not know." Now, in view of the findings that the engine was not worthless, but that the appellant had been able to successfully carry out his threshing contracts with it, the appellant was only entitled to have the amount of the damages sustained by him by reason of the engine failing "on plowing," which he alleged was $700, deducted from the amount the appellee was entitled to recover on the notes sued on, and as the amount of such damages was not ascertained and determined by the jury, that issue having been submitted to them, the trial court could in no event enter any judgment other than the one it did enter. As the jury found that they did not know what profits appellant would have made with an engine such as the one appellee contracted to deliver him, and did not know the amount of money appellant lost in his efforts to operate the engine which was delivered to him, it must be presumed here that the evidence offered upon those issues was too indefinite, uncertain, and insufficient to justify a finding upon them, and that the trial judge recognizing such condition of the evidence rendered judgment in favor of the appellee for the full amount of its claim.

The views expressed render it unnecessary to discuss and determine whether or not the appellant failed to give the notice provided for in the contract or the effect of the failure to give such notice, if it was not given. There is a finding of the jury to the effect that appellant gave notice of some defective adjustments and that appellee remedied such defect.

[4] The contention of the appellant made in the sixth assignment of error, which is copied above, to the effect that the findings of the jury upon the issues submitted in questions 1, 2, 4, 5, and 12 are so inconsistent and contradictory that no judgment could properly be rendered in favor of the appellee, and which, as we have said, should not be sustained, will also be overruled. In answer to the long general question No. 1, quoted above, the jury said, in effect, that the conversation therein referred to between the appellant and appellee's agent, White, occurred, and that in that conversation the appellant asked appellee's said agent if the engine he proposed to sell to appellant would pull 10 plows in plowing ordinary land, and that said agent replied it would pull 12 plows. In answer to question No. 5, above set out, the jury answered, in effect, that the engine sold and delivered to appellant was not such an engine as appellee's agent represented it to be in question No. 1, in that it "failed on plowing." It is upon these apparent inconsistent answers of the jury that appellant seems to predicate in the main his contention, and asks for a reversal of the case. When fairly and properly considered, we think there is no such inconsistency or contradiction in the answers as would war-

rant us in setting aside the judgment of the district court. The first answer of the jury respecting the drawing capacity of the engine was made in response to a long question calling for a finding touching many separate and distinct matters, and it seems manifest to us, when all their findings are considered, that they did not intend to find, and did not in fact find, in answer to any question propounded to them, that the engine delivered to appellant would pull twelve plows in plowing ordinary land. When the specific question of whether the engine sold and delivered to appellant was such an engine as appellee's agent represented it to be, was put to them, stripped of the numerous questions included in question No. 1, and the confusion incident to such a question, they answered, "No; engine failed on plowing." They further found that with an engine such as represented in question No. 1 appellant would have been able to carry out his plowing contracts, and would have made a profit on said plowing contracts.

[5, 6] At the request of the appellee the court submitted to the jury the following issue:

"Did the defendant, Frank Varley, on or about the 1st of October, 1913, the date he paid to plaintiff the first note maturing on said machinery, know of the defects alleged concerning said gas tractor engine?"

It is contended that the submission of this issue was error, because: (1) The appellant "sued herein upon a verbal contract for damages by way of cross-action," and defendant's acceptance of the defective machinery and the payment of its purchase price does not in any manner estop him from asserting his right to damages; (2) because the "submission of said issue prejudiced the rights of the defendant before the jury, in that it indicated to the jury that the court was of the opinion that the defendant would not be entitled to recover herein because of having made the said payments." The appellant's brief does not disclose the jury's finding upon the issue, but, looking to the transcript, we find that they answered the question submitted in the affirmative. If it be conceded that in a proper proceeding and under certain circumstances the acceptance of defective machinery and payment of a part of the purchase price would not estop the purchaser from recovering damages sustained by reason of the defects, and that in such case the acceptance of the payment of a part of the purchase money with knowledge of the defects would be an immaterial issue, still the submission of the issue here complained of in the state of the record before this court furnishes no reason for a reversal of the judgment of the trial court. Whether it was proper to submit the issue depends upon the particular facts of the case, and in the absence of a statement of facts, it will be presumed that the evidence warranted its submission. Besides, the jury having failed to find and assess any amount as damages sustained by appellant as a result of the breach of the warranty contained in the written contract entered into for the sale and purchase of the machinery, if there was such a breach, and having failed to find and assess any amount as damages sustained by the appellant as a result of such breach or as a result of the alleged fraud on the part of appellee in securing appellant's signature to said contract, no other judgment than the one rendered could have been rendered, and the submission of the issue was harmless. In reference to the second reason urged by appellant why said issue should not have been submitted, it is sufficient to say, in addition to what we have already said above, that it is altogether improbable that the jury were influenced in the determination of any other question propounded to them by said issue.

[7, 8] The refusal of the following special charge is made the basis of appellant's eleventh assignment of error:

"The burden of proof is upon the plaintiff to show that the terms of the contract pleaded by it were in all respects complied with by it."

This charge, we believe, was properly refused. The plaintiff sued on the notes and mortgage given by the defendant, Varley, the introduction in evidence of which would entitle it to recover unless defeated by the defenses set up by the defendant. The defenses pleaded by him were a breach of the contract entered into for the machinery sold him, in consideration of which said notes were executed and delivered, and fraud practiced by appellee in securing the execution of said contract. The burden of proof was upon appellant to show the breach of the contract and fraud pleaded by him, and the charge refused would have relieved the appellant of that burden and cast upon appellee the burden of disproving the breach and fraud alleged. It would have, at least, been so confusing as to probably mislead the jury.

The remaining assignments of error have been disposed of against appellee's contention by what we have already said, or disclose no reversible error. They relate to no new question and need not be discussed.

The record disclosing no reversible error, the judgment of the court below is affirmed.