RUDASILL v. RUDASILL et al.   (No. 8244.)

.(Court of Civil Appeals of Texas.   Dallas. Jan. 31, 1920.   On Motion for Rehearing, March 13, 1920.)

1. APPEAL AND ERROR ⬅═293—MOTION FOR NEW TRIAL NOT NECESSARY TO REVIEW JUDGMENT ON SPECIAL VERDICT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1990, providing for entry of judgment on special verdict, and article 1991, authorizing appeals without a statement of facts upon noting exceptions on the record in the judgment entry, as well as Supreme Court rule 71a, requiring motions for new trial except where not required by statute, it is unnecessary, where a case was submitted on special issues, and a special verdict returned, that motion for new trial be made in order to entitle appellant to review of judgment which he asserted was erroneous because not following the findings.

2. APPEAL AND ERROR ⬅═294 (1)—MOTION FOR NEW TRIAL NECESSARY TO CONSIDERATION OF INSUFFICIENCY OF EVIDENCE.

Assignments of error based on the insufficiency of the evidence to support the verdict will not be reviewed unless that ground was specified in a motion for new trial.

3. CONSTITUTIONAL LAW ⬅═70(3)—WISDOM OF LEGISLATION IS A QUESTION SOLELY FOR LEGISLATURE.

The wisdom of statutory enactments is a question solely for the Legislature.

4. CONSTITUTIONAL LAW ⬅═70(1)—PROVINCE OF COURT ONLY TO CONSTRUE THE LAWS.

The province of the courts is simply to declare the written law as found, and they should not by construction, when its language is plain and unmistakable, add to or take from statutory enactments.

5. HUSBAND AND WIFE ⬅═137(1)—WIFE ENTITLED TO CONTROL OF HOMESTEAD ESTABLISHED ON HER SEPARATE PROPERTY.

In view of Const. 1869, art. 12, §§ 14 and 15, providing for the security of married women in their private property, and declaring that the Legislature shall protect from forced sale the homestead, which was in force at the time plaintiff acquired land before her marriage to defendant, as well as Const. 1875, art. 16, §§ 15, 50–52, relating to separate property of married women and homestead rights, plaintiff, where after marriage she and her husband established a homestead on her separate property, was entitled, under Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), amending Acts 33d Leg. (1913) c. 32, and expressly conferring upon the wife the sole management and disposition of her separate property, both real and personal, to control of the homestead, and a decree allowing the husband to control the homestead and revenues derived therefrom, was erroneous; for since the act of 1917 the revenues derived from such property were the separate property of the wife.

6. HUSBAND AND WIFE ⬅═125, 144 — WIFE MAY RECOVER FROM HUSBAND AND ADULT SONS PROCEEDS OF SEPARATE LANDS ON THEORY OF IMPLIED LETTING.

Where the husband and adult sons farmed a large parcel of land belonging to the wife, on part of which was located the family homestead, held, that since Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), amending Acts 33d Leg. (1913) c. 32, which made the proceeds her separate property, the wife was entitled to recover from the husband and sons one-third of the value of the crops raised on the theory of an implied letting.

7. TRUSTS ⬅═17, 18(8)—NO PAROL TRUST AS TO LAND PURCHASED IN WIFE'S NAME IN FAVOR OF HUSBAND PAYING NO CONSIDERATION.

While a deed absolute on its face may have a parol trust ingrafted upon it, lands standing in the name of a wife cannot be held to be the joint property of the husband and wife, where the wife paid the entire consideration, etc., because before marriage it was agreed between the parties that they should buy the land jointly and own it in equal portions; it appearing the husband paid none of the consideration.

8. HUSBAND AND WIFE ⬅═265—SPOUSE MUST ACCOUNT FOR COMMUNITY FUNDS USED IN IMPROVING SEPARATE ESTATE.

Where the community funds are used in payment of separate property of one of the spouses, or where valuable improvements are made on such property out of community funds of the spouses, the separate estate of such spouse must account to the community estate.

9. HUSBAND AND WIFE ⬅═257—RENTS DO NOT ACCRUE TO SPOUSE FOR USE OF SEPARATE PROPERTY AS HOMESTEAD.

Where separate property of a married woman was used and occupied as a homestead, held, that prior to Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621),

───────────────

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

amending Acts 33d Leg. (1913) c. 32, no rents are deemed to have accrued to her by reason of the use and occupancy which could be offset against investment of community property in improving the lands.

10. HUSBAND AND WIFE &#8469;257—RENTS FROM SEPARATE PROPERTY OF WIFE CONSTITUTED COMMUNITY PROPERTY PRIOR TO ACT OF 1917.

Rents accruing from the separate property of a wife would constitute community property of the husband and wife subject to the husband's management and control for which he was not bound to account to the wife prior to Acts 35th Leg. (1917) c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), amending Acts 33d Leg. (1913) c. 32.

11. HUSBAND AND WIFE &#8469;265—WIFE NOT IMMEDIATELY REQUIRED TO ACCOUNT TO COMMUNITY FOR IMPROVEMENT OF SEPARATE ESTATE.

Where the separate lands of a wife were improved with the community funds, but it did not appear that the spouses would never become reconciled, *held* that, as the homestead which was located on the separate property of the wife still existed for the joint use of the spouses, and the community estate remained intact, the wife would not be required to account to the community estate for the improvement of her separate property.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by Permalla C. Rudasill against Emanuel Rudasill and others. From the judgment denying part of the relief sought, plaintiff appeals. Affirmed in part, and reversed and rendered in part.

See, also, 206 S. W. 983.

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant.

Wood, Jones & Hassell, of Sherman, for appellees.

TALBOT, J. The appellant brought this suit against the appellee Emanuel Rudasill, who will be referred to as appellee, for divorce and an adjustment and settlement of their property rights. Thereafter, by an amended petition, their three sons, W. S., S. E., and Pearl Rudasill, who were claiming some of the personal property involved in the suit, were made parties defendant. The case was submitted to a jury on special issues, and upon their findings judgment was rendered denying the appellant's prayer for divorce and determining and fixing the rights of the parties to the property in controversy. No complaint is made in this court of that portion of the judgment denying appellant a divorce, and the sufficiency of the pleadings is not questioned. The material facts, as disclosed by the evidence and the findings of the jury, are substantially as follows: The appellant was formerly Permalla C. Tait, a widow, and came to Texas from Louisiana in

company with her two sons, J. M. and C. A. Tait, and her father, Eph Carpenter. She and the appellee, Emanuel Rudasill, were married in Grayson county, Tex., in February, 1871, and have lived in said county ever since that date. Prior to appellant's marriage with the appellee, and on September 27, 1870, J. H. Weaver conveyed to her in her then name of Permalla C. Tait, by general warranty deed, two tracts of land situated in Grayson county, Tex., containing respectively 363 and 20 acres of land for the recited consideration of $3,500 cash and a note for $1,000 signed by E. Carpenter, who was Mrs. Tait's father. The cash consideration of $3,500 was paid by Mrs. Tait out of the proceeds of cotton raised by her and her first husband in Louisiana, and brought by her to Texas before she married the appellee, $2,000 of which was treated as belonging to her two sons, J. M. and C. A. Tait. The $1,000 note recited as a part of the consideration for the purchase of the land was paid with $800, which was given Mrs. Tait by her father, E. Carpenter, the signer of the note, and the balance with money which was the separate property of Mrs. Tait. Soon after their marriage, and in 1871, appellant and appellee moved upon the 363 acres of land described in the deed of September 27, 1870, and have ever since resided upon it as their home. About 1883 the $2,000 of the Tait boys' money their mother had used in paying for the 363 and 20 acre tracts of land was repaid to them by the appellee out of community funds belonging to him and his wife. The appellees W. S., S. E., and Pearl Rudasill, sons of the appellant and the appellee, now aged respectively 46, 44, and 42 years, were reared on the 363-acre tract of land and supported and educated from the proceeds arising from the cultivation and use thereof. S. E. and Pearl Rudasill have always resided and still reside on said land, and W. S. Rudasill resided thereon until about ten years ago. Since 1891 the 363-acre tract and 40 acres of land, the community property of the appellant and the appellee, and 160 acres of land belonging to appellees S. E. and Pearl Rudasill, have been occupied and cultivated by all of the appellees without any express agreement between them or with the appellant. The proceeds arising from such use of lands were kept in bank in the name of the father, Emanuel Rudasill, and each one of the appellees used of this common fund whatever amount he needed. The appellant was aware of the way these lands had been previously cultivated and the proceeds arising therefrom appropriated, and during the season 1917–1918 they were cultivated the same way without any express assent or dissent on her part. There was at the time of the trial of this case in the hands of the appellee the sum of $4,-338.58, the proceeds of the crop raised on the 363-acre tract since the act of the Legislature

of 1917 has been in force. In May, 1918, the appellant left the appellee, and has ever since remained away from him. Prior to and at the date of the deed dated September 27, 1870, conveying the 363 and 20 acre tracts of land to appellant, she and the appellee were engaged to be married, and it was agreed between them that they should purchase said lands, and that they would own it in equal portions—that is, one-half each. Appellee did not contribute any part of the cash that was paid for the lands, nor did he pay any portion of the $1,000 note recited in the deed as a part of the consideration for the purchase of the lands. Prior to the filing of this suit the appellant never denied that appellee had any interest in the 363 and 20 acre tracts of land. There have been improvements placed upon the 363-acre tract by the appellant and her husband of the value of $4,085, and the value of the land has been enhanced thereby $4,085. Appellee did not contribute anything out of his separate means towards the cost of said improvements. The fair cash rental value of the 363-acre tract per year since the marriage of appellant and the appellee has been $907.50. There were raised during the season of 1918 on the 363-acre tract 3,772 bushels of grain, of which 520 bushels were kept for seed, and 3,252 bushels sold; on the 40-acre tract 383 bushels, all of which were sold; on the 160-acre tract owned by S. E. and Pearl Rudasill 2,468 bushels, all of which were sold. This grain was sold at $2.11¾ per bushel, and at the time this suit was tried, $5,370.25 of the amount thereof was on deposit in the Merchants' & Planters' National Bank, and $2,816.10 was held by the Diamond Mills. The proportion of the money received on the different tracts is as follows: On the 363 acres 53/100; on the 40 acres 6/100; and on the 160 acres 41/100.

Upon the return of the jury's special verdict both appellant and appellees filed motions for judgment, which were granted in part and refused in part. In adjusting and fixing the rights of the respective parties, the trial court, among other things which are not complained of on this appeal, adjudged the 363 acres and the 20 acres described in the deed from J. H. Weaver to Permalla C. Tait, dated September 27, 1870, to be the separate property of the appellant; that the homestead of the appellant and appellee had been and was at the institution and trial of this suit situated upon the 363-acre tract; that 200 acres of said tract, described by metes and bounds, be set aside as the homestead of appellant and appellee, and that the said appellee, being the head of the family, should have the control thereof as long as he occupied it as a home, and that he and his wife should jointly be entitled to the revenues arising therefrom as community property; that the appellant should have the control and management of the balance of said 363-acre tract and the 20-acre tract; and that appellees and each of them be enjoined from interfering therewith. Of the $5,370.25 in the Merchants' & Planters' National Bank and $2,816.10 in the Diamond Mills, $650.70 was adjudged to be the separate property of the appellant, and each of the appellees awarded one-fourth of the balance; the one-fourth adjudged to appellee Emanuel Rudasill being declared to be the community property of himself and the appellant. Both the appellant and appellee filed and presented motions to "correct and amend" the judgment rendered which appear to have been overruled. The appellee Emanuel Rudasill then filed a motion for a new trial, which was also overruled. No motion for a new trial, unless her motion to correct and amend the judgment may be considered such or equivalent thereto, was filed by the appellant. The judgment rendered, as well as the court's action in refusing to correct and amend the same, was excepted to, and the appellant perfected an appeal to this court.

Appellant presents and urges in her brief five assignments of error. The first, second, and fourth are grouped and are to the following effect:

"The court erred in rendering the following part of section V of the judgment, viz.: 'Out of the 363-acre tract referred to in paragraph 4 hereof there is hereby set aside to the plaintiff and the defendant Emanuel Rudasill 200 acres as a homestead.' "

"The court erred in rendering section VII of the judgment as follows: 'The 200-acre homestead set apart in paragraph 4 hereof is here recognized as the homestead of plaintiff and defendant Emanuel Rudasill, and they are hereby adjudged to be entitled to occupy it as such, and jointly to be entitled to the revenues arising therefrom. The defendant Emanuel Rudasill, being the head of the family, is hereby adjudged to have the right of control of the said 200-acre homestead as long as the same is occupied by him as a homestead.' "

"The court erred in not rendering judgment upon the verdict of the jury and the evidence in favor of the plaintiff giving her the right to the control, management, rents, and revenues of all of the 363 and 20 acre tracts adjudged to be her separate property, and enjoining the defendants from interfering therewith."

The third and fifth are likewise grouped and are as follows:

"The court erred in rendering section VIII of the judgment, as follows: 'The funds on hand, to wit, $5,370.25 in the Merchants' & Planters' National Bank, and $2,816.10 in the Diamond Mills, are hereby adjudged as follows: To the plaintiff in her own separate right $650; to the defendant, Emanuel Rudasill, for the community estate of himself and plaintiff, $1,883.91; to W. S. Rudasill, $1,883.91; to S. E. Rudasill, $1,883.91; and to Pearl Rudasill, $1,883.91.' "

"The court erred in not rendering judgment in favor of plaintiff for $4,338.58, being that part of the funds referred to in section VIII of the judgment which were proceeds of crops planted and raised on the separate lands of plaintiff after the act of 1917 was in force.' "

[1] Appellee Emanuel Rudasill objects to the consideration of any of these assignments because the appellant filed no motion for a new trial in the court below. The objection is not, in our opinion, well taken. In Varley v. Nichols-Shepard Sales Co., 191 S. W. 611, we held that, under article 1990 of Vernon's Sayles' Civil Statutes, providing for entry of judgment on special verdict, article 1991 of said statute, authorizing appeals without a statement of facts upon noting exceptions on the record in the judgment entry, and Supreme Court rule 71a, requiring motions for new trial except where not required by statute, it was not necessary, where the case was submitted to a jury on special issues and a special verdict rendered, that a motion for a new trial be made in order to entitle the appellant to a revision of the judgment from which he appeals. We do not doubt the correctness of that ruling and adhere to it. There is just as strong and perhaps stronger reason for holding in the present case that a motion for a new trial was not essential to appellant's right to have the errors complained of reviewed on appeal as in the Varley Case. Here there is no question raised as to the correctness of the jury's findings upon the several issues submitted. On the contrary, it is in effect admitted, for the purpose of the appeal, that all of the findings of the jury are supported by sufficient evidence to justify such findings and no effort is made to disturb them. The complaint is that the judgment rendered upon the findings of the jury in the particulars pointed out by the assignments of error is contrary to the applicable law, and therefore erroneous; in other words, appellant's complaint was against the court for not rendering the proper judgment under the law on the special verdict, and with a view of calling the court's attention to the errors of law claimed to have been committed and to have the judgment corrected the motion to amend the judgment was filed and presented. The trial court did not concur in appellant's view of the law and ruled against her. The court having thus ruled, it is not to be presumed that he would change his ruling, and hence in order to appeal from such action it is not necessary that it be made ground for a new trial.

[2] Assignments based upon the insufficiency of the evidence to support the verdict, unless that ground was specified in a motion for a new trial, will not be considered on appeal. "But the ruling has not been applied to those matters upon which the trial court has directly acted and which are made properly to appear in the record of the case." W. U. Tel. Co. v. Mitchell, 89 Tex. 441, 35 S. W. 4; Clark & Loftus v. Pearce, 80 Tex. 151, 15 S. W. 787.

[3-5] The first proposition contended for by the appellant is:

"The fact that the homestead is upon the separate property of the wife not only does not exempt it from the control given her by the act of 1917, but makes it peculiarly subject thereto."

This presents for our decision a very important question, and one, we believe, of first impression in this state. It involves a determination of the effect of Acts of the Thirty-Fifth Legislature, c. 194 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), amending article 4621, c. 32, of the General Laws of the Thirty-Third Legislature, concerning the marital rights of parties, upon the right of the husband under former law to manage and control the homestead of the family, when situated upon the separate property of the wife. The act in question expressly confers upon the wife the sole management, control, and disposition of her separate property, both real and personal, with the proviso that the husband's joinder shall be necessary to a conveyance or incumbrance of her real estate and transfer of her stocks and bonds; whereas under the former law the sole management of all of her separate property was given to the husband. It also provides that the homestead, whether the separate property of the husband or wife, or the community property of both, shall not be disposed of except by their joint conveyance, except where the husband has permanently abandoned the wife, or is insane, in which event the wife may sell and make title to any such homestead, if her separate property, in the manner provided in said act for conveying or making title to her other separate property. Unquestionably the Legislature had full authority to change the law in the respects accomplished by the act under consideration, and it occurs to us that the clear, plain, and certain language in which the act is couched is not open to construction, and manifests that it was the purpose of the Legislature, in the exercise of its discretion, to overturn the long-established policy of investing the husband with management of the wife's separate property and confer that power upon the wife, regardless of whether or not such property constituted the homestead of the family. There is nothing in the act that makes a distinction between a homestead which is the separate property of the wife and other separate property owned by her. It unqualifiedly gives the wife the right to manage and control all of her separate property, whether real or personal, and it is the duty of the courts to give effect to its plain and unambiguous language. To hold that it was the intention of the Legislature to exempt the wife's separate land upon which the homestead of the family is situated would be an unwarranted construction of the act and in violation of its express and unequivocal terms. The change wrought by it may be radical and far-reaching, but the wisdom of its enactment and the consequences of its enforcement were matters for the consideration of the Legislature, and not for the courts. The province of the courts is simply to de-

(219 S.W.)

clare the written law as they find it, and not by construction, when its language is plain and unmistakable, to add to or take from it. We know of no constitutional provision that inhibits the passage of the statute in question. As suggested by counsel for appellant, the parts of the Constitution of 1869 which were in force when appellant acquired the land and the home of herself and husband subsequently established upon it are sections 14 and 15 of article 12. Section 14 reads:

"The rights of married women to their separate property, real and personal, and the increase of the same, shall be protected by law."

So much of section 15 as is necessary to state, is as follows:

"The Legislature shall have power, and it shall be their duty, to protect by law, from forced sale, a certain portion of the property of all heads of families. The homestead of a family, not to exceed two hundred acres of land (not included in a city, town, or village), * * * shall not be subject to forced sale for debts, except," etc.

This section plainly has reference only to the protection of the homestead against creditors and does not attempt to restrict the power of the Legislature to regulate the respective rights of husband and wife therein as between themselves. The pertinent parts of the Constitution of 1875 in force at the time the act of 1917 was passed are sections 15, 50, 51, and 52 of article 16. Section 15, after declaring what shall constitute the separate property of the wife, enjoins upon the Legislature the passage of laws more clearly defining the rights of the wife in relation as well to her separate property as that held in common with her husband. There is not only no restriction placed upon the power of the Legislature by this section of the Constitution, but by it the duty is imposed upon that branch of the state government to pass laws similar, or of like character, to the act of 1917, and no exception is made of a homestead on the separate property of the wife. Section 50, like section 15, of the Constitution of 1869, relates solely to the protection of the homestead against forced sale by general creditors, and has nothing to do with the rights of husband and wife as between themselves. Section 51 merely defines urban and rural homesteads. Section 52 simply declares that on the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased and shall not be partitioned during the lifetime of the survivor. It makes no attempt whatever to regulate the rights of the husband and wife while both are living. It is true that heretofore the husband has been the recognized head of the family with the right to fix and manage the homestead, but we have been unable to discover anything in our Constitution which restricts the power of the Legislature to confer upon married women full control of their separate property, whether it is or is not occupied as a home, and that the Legislature has done this in the act of 1917, and has in addition thereto, given her the right of control and disposition of the rents and revenues derived therefrom, there seems to be no doubt. That act expressly provides that all property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, and the rents and revenues derived therefrom, shall be the separate property of the wife, and that during marriage she shall have the sole management, control, and disposition of her separate property, both real and personal.

It is argued that, if appellant's contention is correct, "she could confine appellee's habitat to the dwelling, aye, to one room of the dwelling, or require him to sleep in the barn or outhouses." In reply it may be asked why similar consequence to the wife might not follow if the contention of the appellee is correct and he be put in possession and control of the homestead. It occurs to us that such consequences are just as likely to follow in the one case as the other, and that such argument in favor of the appellee is without force. The statute does not authorize the wife, where the homestead has been established upon her separate property, to deprive the husband of the use of such homestead. Nor would a decree of the court placing her in possession and giving her the right to manage and control such homestead necessarily have the effect to remove the husband off the homestead. The effect of such a decree would be to take from him the control and management of such homestead and award it to the wife in virtue of the statute of 1917. Neither the family nor the homestead in such event would be destroyed. But it is true that, if the act of 1917 does not include or apply to the homestead, and if the husband, as the head of the family, may establish the homestead upon the wife's separate land against her consent, then, as argued by counsel for appellant, the husband, where he and his wife each own 200 acres of land suitable for a home, could, if he so desired, designate the wife's 200 acres as the homestead, and thereby make the rents and revenues arising therefrom community property, while the revenues arising from his 200 acres would be his separate property.

We conclude that the trial court erred in decreeing that the appellee Emanuel Rudasill should have control and management of the 200 acres set apart out of the 363-acre tract involved in this suit as the homestead of himself and the appellant, and in decreeing that the revenues arising therefrom since the act of 1917 became effective is community property, and that appellee should have the sole

control, management, and disposition of such revenues.

[6] This brings us to a consideration of appellant's third and fifth assignments of error copied in the former part of this opinion. The propositions advanced under these assignments are: (1) That the proceeds of crops planted and raised by the husband on the separate property of the wife since the act of 1917 has been in force, are separate property of the wife; (2) that, if the wife is not entitled to all the proceeds of crops raised by her husband upon her separate property since the act of 1917 has been in force, she is at least entitled to the customary rental of one-third. As shown in appellant's third assignment of error, the court awarded to appellant of the $5,370.25 in the Merchants' & Planters' National Bank and of the $2,816.10 in the Diamond Mills $650.10, to the said appellee as community property of himself and wife, $1,883.91, and to each of the appellees W. S. Rudasill, S. E. Rudasill, and Pearl Rudasill $1,883.91. Our conclusion is that this was not a proper distribution of the funds mentioned. We do not think that appellant, under the facts, was entitled to all the proceeds of the crops raised upon the 363-acre tract of land upon which the homestead was situated since the act of 1917 has been in force, but believe she should be regarded and treated as the landlord of the appellee under an implied rental contract, and that as such she is entitled to the customary rental which appellee Emanuel Rudasill alleged, and which appeared in effect, was one-third of the crops or proceeds thereof. The fact that the land upon which the crops were raised constituted the homestead of appellant and her husband furnishes no sufficient reason for denying to her this customary rental of one-third. But it is undisputed, as we understand the record, that the premises were cultivated jointly and crops raised during the season of 1917–1918 and for a number of years prior thereto, by appellant's husband and his three sons, W. S., S. E., and Pearl Rudasill, and the proceeds enjoyed by them jointly without any express contract or agreement with appellant as to the rent to be paid, or as to what their respective interests should be. Prior to the act of 1917 the crops raised on the separate lands of the wife were community property, but by that act they become the separate property of the wife, even though the land constitutes the homestead of the family.

[7] The appellee Emanuel Rudasill presents cross-assignments of error numbered 1, 2, 3, 4, and 5 in the brief. Under assignments 1, 2, and 3 the single proposition is advanced that the findings of the jury on the special issues submitted demanded that the trial court enter a decree to the effect that the 363 and 20 acre tracts of land in controversy were the joint property of himself and appellant. This contention is predicated upon the findings of the jury to the effect that prior to the execution and delivery of the deed dated September 27, 1870, conveying said lands to the appellant, there was an agreement between the appellant and the appellee, who were then engaged to be married, that they should purchase the lands and own it in equal portions —that is, one-half each—and that appellant did not prior to the institution of this suit by words or acts deny that said appellee had any interest in said lands.

We do not think this contention should be sustained. That a deed absolute on its face may have a parol trust, or terms and conditions not expressed therein, ingrafted upon it, is thoroughly settled by the decisions of this state. But, under the evidence in this case, the trial court correctly held that appellee was not entitled to have judgment declaring the lands in question to be the joint property of himself and wife, but that said lands were the separate property of appellant. To entitle appellee to such a decree, it was necessary that the jury find not only that there was a contract for the acquisition of the land, but that he had complied with his part of the contract. The jury found that prior to the conveyance of the land to appellant, who was then Mrs. Tait, there was an agreement between her and appellee that they should purchase the land and "own it in equal portions"; but the specific issue of whether or not he had complied with his part of the contract does not appear to have been submitted to the jury, and, if it had, we think the evidence would not have authorized an affirmative finding upon it. There is no direct evidence showing the proportion of the purchase price to be paid by the parties, but if the contract as claimed by the appellee was made, the presumption should be indulged, we think, that each was to pay one-half of the purchase money, and doubtless the jury's finding means, or should be construed to mean, that each was to pay one-half thereof. It certainly cannot be presumed that appellant agreed that appellee should have a half interest in the land for less than one-half of the total amount to be paid therefor, and there is nothing to justify the conclusion that appellant was to pay all of the purchase price and make appellee a gift of a one-half interest in the land. The deed was to the appellant alone, and vested in her the full legal title, and the burden was upon appellee to prove that he had paid his part of the purchase price of the land, and this he failed to do. The jury found that he had not paid anything out of his separate means for the land, but did find that with community funds of himself and wife he made improvements on the land of the value of $4,085, and that he had with like funds repaid appellant's sons, J. M. and C. A. Tait, by a former marriage, the $2,000 used by appellant in paying for the land. This payment to the appellant's sons and the making of these improvements out of the community property did not entitle ap-

pellee to any part of the land. Payment in this way was no part of the contract entered into previous to the vesting of the legal title in appellant, as in the case of Gardner v. Randell, 70 Tex. 455, 7 S. W. 781. The payment to the Taits was nothing more than a discharge of a debt, which appellant owed them, and made after the title to the land had been completely conveyed to her by a deed without reservation and the title fully vested in her. Allen v. Allen, 101 Tex. 362, 107 S. W. 528. This was true also at the time the improvements were made upon the land.

[8-11] The fourth and fifth cross-assignments of error are to the effect that the court, having adjudged the 363 and 20 acre tracts of land to be the separate property of the appellant, erred in not charging her with the $2,000 used in payment of a part of the purchase price of said lands and the $4,085, the value of the improvements placed on said lands, and to credit the same to the community estate of the appellant and the appellee so as to give the said Rudasill credit for his one-half thereof. The trial court, as shown by the judgment entered, declined to render judgment, as appellee here contends he was entitled to, on the ground that the revenues and benefits accruing to the community estate of appellant and appellee have been sufficient to reimburse the community for this outlay. The propositions asserted under the assignments in substance are: (1) That where community funds are used in payment for separate property of one of the spouses, and where valuable improvements are made on such property out of community funds of the spouses, the separate estate of said spouse must account to the community estate for the funds so used; (2) that, the 363 acres being used as a homestead by appellant and appellee, no rents accrued to appellant by reason of the use and occupancy of the same; (3) that, even if rents had accrued on said 363 acres, the same would have constituted community property of appellant and appellee up to the date of the taking effect of the act of 1917, and subject to the control, management, and expenditure of the appellee, for which he would not have had to account to appellant. We think these are substantially correct propositions of law, and that the court erred in adjudging that the revenues accruing to the community estate of appellant and appellee have been sufficient to reimburse the community for the outlays in question. The only revenues that accrued to the community estate of appellant and appellee upon which the court's ruling could have been based, according to the undisputed testimony, consisted of crops raised on the 363-acre tract during its occupancy by appellant and appellee as their home. These crops, up to the enactment and taking effect of the statute of 1917, constitute community property, and are not available for the reimbursement of the com-

munity estate for the amount used by appellee in making improvements on the 363 acres of land or in discharge of the debt incurred by appellant to her sons by reason of the use of $2,000 of their money in the purchase of said land. These expenditures constitute claims in favor of the community for the payment of which the separate estate of appellant is liable, and the obligation cannot be discharged out of community funds, and to give full effect, however, to appellee's contention, as we understand it, would require at least a partial partition of the community estate of himself and wife. This, we think, would not be proper at this time. It does not appear from any finding that there is no reasonable expectation or possibility that the appellant and her husband would ever resume their marital relations and that their separation was complete and final. The divorce prayed for was not granted, the conjugal partnership has not been dissolved, the homestead still exists for their joint use, and their common property should remain intact. We therefore conclude that, notwithstanding the community estate of appellant and appellee should ultimately be reimbursed out of the separate property of appellant for the expenditures made in repaying the Taits and improving the 363-acre tract of land as indicated, no judgment should now be rendered in favor of the appellee partitioning the community estate of appellant and appellee or any part of the same. The judgment of the district court upon this phase of the case should, in our opinion, be reversed so as to leave the matter open for future adjustment or adjudication.

In accordance, therefore, with the views expressed in this opinion, the judgment of the district court, in so far as it adjudges the 363 and 20 acres of land in controversy to be the separate property of appellant, is affirmed, but in so far as it sets apart the described 200 acres out of said 363-acre tract as the homestead of appellant and appellee, and gives to the appellee the control and management of the same, and in so far as it declares the crops raised thereon or rents and revenues derived therefrom since the act of 1917 has been in force to be community property, and gives the control and management thereof to the appellee, and in so far as it adjudges that the revenues and benefits accruing to the community estate of appellant and appellee have been sufficient to reimburse said community estate for the expenditures made in repaying the Taits and improving the 363 acres the separate property of appellant, and in awarding to appellant only $650.70 of the $8,186.35 in the possession of the appellee in her separate right, and adjudging to the appellee Emanuel Rudasill $1,883.91 of said sum for the community estate of himself and appellant, and the balance of said sum to W. S. Rudasill, S. E. Rudasill, and Pearl Rudasill

in equal portions, is reversed, and judgment will be here rendered declaring the crops or revenues arising from the 363-acre tract since the act of 1917 has been in force are the separate property of appellant, and giving to her the control and management thereof, and of the entire 363-acre tract, that judgment be here rendered in favor of appellant for one-third of the money derived from the 363-acre tract, to wit, $1,446.25, as her separate property, and that the balance of said sum be adjudged in equal portions to the appellees, Emanuel Rudasill, W. S. Rudasill, S. E. Rudasill, and Pearl Rudasill. Otherwise the judgment of the district court is not disturbed.

Affirmed in part, and reversed and rendered in part.

### On Motion for Rehearing.

After a careful consideration of appellees' motion for a rehearing, we have reached the conclusion that we should adhere to the disposition made in our original opinion of the several questions therein discussed. Appellees state in their motion for rehearing that in our original opinion we refer erroneously to the judgment of the trial court as having set aside 200 acres of the 363-acre tract of land in controversy as a homestead "to be used as community property." This statement is incorrect, and is evidently a mistake on the part of the draftsman of the motion. We have read and re-read the opinion, and have been unable to find anywhere in it the use by this court of any such expression.

The motion will be overruled.